FARMER, J.
 

 In this capital murder case in which the State had given pretrial notice seeking the death penalty,
 
 [1]
 
 after four days of trial the jury began deliberating just after 7:00 in the evening. Three hours later, the jury informed the court that it had not reached any verdict but that the jurors wished to suspend their deliberations and go home. The following day was a scheduled holiday, Veteran’s Day, so the break would be three days before deliberations could be resumed on Monday. Defendant objected to releasing the jury and requested that jurors be sequestered. He argued there had been media attention about the case, including a newspaper article that very day. He was concerned that by design or misadventure jurors would be exposed to media coverage.
 

 The court denied sequestration, giving two reasons. First, the judge reasoned that the “mere possibility” that the jurors:
 

 “may decide that they want to intentionally and willfully violate their oaths, violate my instructions ... is nothing that would support sequestration. And that’s especially true where this is a first — that there’s been any mention of sequestration.”
 

 Second, he said:
 

 “[it] is a tremendous burden upon the sheriff. And I don’t think they have enough manpower right now to be able
 
 *293
 
 to do that ... not at this last minute. Nor is it supported by anything that’s occurred. There’s no factual basis.”
 

 The court again reminded the jury of the importance of not being influenced by outside sources in order to preserve the integrity of the verdict. The jurors were thereupon released for the three-day weekend.
 

 The jury returned on Monday, resumed deliberations, and returned a verdict of guilty as to first-degree murder. At the conclusion of the penalty phase, the jury did not recommend death. The trial judge sentenced defendant to life imprisonment.
 

 Defendant moved for a new trial on account of the failure to sequester the jury. In denying the motion, the trial judge stated that this was not a death penalty case because the death penalty was not imposed; that the mere fact that the State gave notice that it would seek the death penalty did not make this a death penalty case; that there had been no inquiry of jurors as to the possibility of sequestration; and that defendant had shown no prejudice from the failure to sequester the jury during deliberations. We reverse.
 

 More than a half century ago, after a trial court failed to sequester jurors during deliberations, our Supreme Court confronted this identical issue and reversed a conviction, explaining:
 

 “There is no showing in the way of evidence that defendant’s rights were prejudiced but trials should not be conducted in a way that defendant had good reason for the belief that he was deprived of fundamental rights. The opportunity was open for tampering with the jury and the temptation to do so was such that we are not convinced that the appellant’s trial was conducted with that degree of fairness and security that the bill of rights contemplates.
 
 A fifteen hours absence under no restraint whatever leaves too much room to question the bona fides of everything that took place during that time,
 
 particularly when one defendant was acquitted and the other was convicted on the same charge and evidence.
 
 It imposes too great a burden on defendant to produce evidence of prejudice to his rights under such circumstances.
 
 We think this error calls for reversal.” [e.s.]
 

 Raines v. State,
 
 65 So.2d 558, 559-60 (Fla.1953). More recently, also confronting the same circumstances and issue, the court again reversed a conviction for failing to sequester a jury during deliberations and said:
 

 “There is no automatic rule requiring sequestration of the jury during the trial of a capital case, the matter being a discretionary one to be governed by the necessities of each such proceeding. However,
 
 to allow the jurors to disperse for a weekend after they have begun their deliberations raises serious questions about their ability to reconvene and resume deliberations completely free from outside influences.
 

 [[Image here]]
 

 “The question of whether jurors may be allowed to separate ... for an extended period of time after they have begun deliberating has been resolved in a variety of ways by courts of the various other jurisdictions. However, the courts of a majority of states have held, either by statute, court rule, or the common law, that such a separation, especially in capital cases and where the defendant objects, is prejudicial error.
 

 “The reason for such a rule is of course, quite simply, to safeguard the defendant’s right to a trial by an impartial jury. This right is fundamental and is guaranteed by the sixth amendment to the United States Constitution and
 
 *294
 
 article I, section 16 of the Florida Constitution.
 
 There is no way to insulate jurors who are allowed to go to their homes and other places freely for an entire weekend from the myriad of subtle influences to which they will be subject.
 
 Jurors in such a situation are subject to being improperly influenced by conversations, by reading material, and by entertainment even if they obey the court’s admonitions against exposure to any news reports and conversations about the case they have been sworn to try.
 

 “Of course, it is usually impossible to determine whether such influences actually prejudice a juror against the defendant in a particular case. The juror himself may well be unaware of the subtle influences which affect his decision. For this reason,
 
 admonition and instruction of the jury is probably ineffective in ameliorating the prejudicial effects of separation during the deliberations.
 
 For this reason also, the use of juror affidavits to prove a probability of prejudice is of dubious value; a juror cannot swear to being prejudiced by influences of which he is unaware.” [c.o.]
 

 Livingston v. State,
 
 458 So.2d 235, 237-39 (Fla.1984). In its holding the court stated:
 

 “We hold that
 
 in a capital case,
 
 after the jury’s deliberations have begun, the
 
 jury must be sequestered
 
 until it reaches a verdict or is discharged after being ultimately unable to do so. A separation of the jurors after commencement of deliberations will generally be grounds for a mistrial,
 
 save for exceptional circumstances of emergency, accident, or other special necessity.
 
 Such a strict rule appears to be necessary in order to keep the attention of the jurors properly focused and concentrated on their deliberations.”
 

 458 So.2d at 239. Clearly the
 
 Livingston
 
 decision was meant to be categorical. Unless the record discloses an exceptional circumstance of emergency, accident or other special necessity, or unless the parties have formally waived the requirement of sequestration on the record, the trial judge has no discretion to deny sequestration, and the failure to sequester deliberating jurors in a capital case is prejudicial error.
 
 [2]
 

 In this case, the State had given formal notice that it would seek the death penalty. In spite of the trial judge’s determination otherwise, this
 
 was
 
 a capital case within the meaning of the rule of sequestration. There were no circumstances allowing an exception to sequestration. Convenience of the persons involved is not a “special circumstance” under the rule. Nor is the failure to plan ahead for such sequestration. There was no waiver. Defendant expressly objected to allowing the jurors to disperse and requested sequestration. The error is prejudicial. Defendant is entitled to a new trial.
 

 We comment briefly on two other issues arising in this case, relating to the significant issue of self-defense, both of
 
 *295
 
 which may reappear in any new trial. The first involves the exclusion of defense cross-examination of State witnesses. The State called a neighbor of the deceased who testified that he never knew the deceased to carry any weapon and that he had never known anyone to have any physical problems with the deceased. Defendant sought to cross-examine the witness as to whether the neighbor knew that the deceased had assaulted a police officer with a machete and had committed other violent crimes. The court sustained the State’s objection.
 

 Similarly the officer interrogating defendant before his arrest indicated then to defendant that the officer knew something about the deceased possibly suggesting violence.
 
 [3]
 
 The officer testified at trial for the State that he made the comment to defendant only “to let him open up and tell me something.” The officer denied knowing anything about the deceased, saying that “[i]t was nothing ... a technique to get him to speak to me about it.” On cross-examination, defendant attempted to ask the officer what he knew about the deceased’s several convictions for violent crimes. Again the court sustained the objection and precluded the cross-examination.
 

 This was error as to both witnesses. The state had placed the deceased’s character in issue with the testimony of both the neighbor and the detective. The obvious effect of the testimony of the neighbor was that the deceased did not carry weapons or have physical altercations with anyone. Then the State sought to buttress that impression by using the Detective to lead the jury to believe that there was nothing in the deceased’s background that would cause him to tell defendant that the deceased “could have done something he shouldn’t have done.” Plainly, the purpose of the State’s evidence was to create the impression that the deceased had a reputation for peaceful conduct.
 

 We have held that when the state “opens the door” to misleading testimony or has made specific factual assertions, the opposing party has the right to correct that information in order that the jury not be misled.
 
 Bozeman v. State,
 
 698 So.2d 629, 630 (Fla. 4th DCA 1997). Here the state created the issue of the deceased’s reputation for peaceful conduct with the testimony, which the defense had every right to contradict to present a different picture of the victim. This cross-examination is especially relevant in a self-defense case to show reasonable doubt about defendant’s guilt. Where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant’s guilt, it is error to deny its admission.
 
 Wagner v. State,
 
 921 So.2d 38 (Fla. 4th DCA 2006)
 

 Second, we caution the trial court in any retrial to avoid giving any impression in jury instructions that defendant has any burden of proof regarding self-defense. Although we express no holding on defendant’s argument that the trial court gave an incorrect instruction implying that defendant had some burden of proof on the issue of self-defense, we suggest great circumspection in formulating special or ad hoc instructions on that subject.
 
 See generally
 
 Fla. Std. Jury Instr. (Crim.) 3.6(f) (2006) (“If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not
 
 *296
 
 guilty.”); and
 
 Murray v. State,
 
 937 So.2d 277 (Fla. 4th DCA 2006) (improper instructions on burden of proof vitiate all jury findings; law did not require defendant to prove justification of self-defense to any standard measuring an assurance of truth, not even by the greater weight of the evidence).
 

 Reversed for new trial.
 

 WARNER and GROSS, JJ., concur.
 

 [1]
 

 .
 
 See
 
 Fla. R.Crim. P. 3.202(a) ("Notice of Intent to Seek Death Penalty. The provisions of this rule apply only in those capital cases in which the state gives written notice of its intent to seek the death penalty within 45 days from the date of arraignment. Failure to give timely written notice under this subdivision does not preclude the state from seeking the death penalty."), [e.o.] In this case, the State's death penalty notice was filed more than two years before trial began.
 

 [2]
 

 . The decision in
 
 Livingston
 
 has been codified into the Florida Rules of Criminal Procedure
 
 See
 
 Fla. R.Crim. P. 3.370(c) (“During Deliberations. Absent exceptional circumstances of emergency, accident, or other special necessity or unless sequestration is waived by the state and the defendant,
 
 in all capital cases in which the death penalty is sought by the state,
 
 once the
 
 jurors
 
 have retired for consideration of their verdict, they
 
 must be sequestered
 
 until such time as they have reached a verdict or have otherwise been discharged by the court. In all other cases, the court, in its discretion, either on the motion of counsel of on the court’s initiative, may order that the jurors be permitted to separate. If the jurors are allowed to separate, the trial judge shall give appropriate cautionary instructions.”) [e.o., e.s.]
 

 [3]
 

 . The officer said: “I have a pretty good idea knowing what I know about him and what I’ve started to hear from you. [I] have a feeling it's very possible he did something that he shouldn’t have done. And I need to know from you what did he do, what did he do to you to make that happen?”