WARNER, J.
We reverse appellant’s convictions for one count of sexual battery on a child and one count of lewd or lascivious molestation. First, the trial court erred in refusing to allow her to call an assistant state attorney to whom the victim recanted his accusations and subsequently retracted his recantation. This ruling deprived appellant of evidence of both motive and improper influence which factored significantly into her defense. As to the lewd and lascivious molestation count, we reverse and remand because the charging document permitted multiple acts to be included and thus did not allow for a unanimous jury verdict. In light of the remand for a new trial, we also address the trial court’s failure to give an instruction on the theory of the defense.
The appellant is the adoptive mother of the victim in this case. She and her husband have two children and adopted the victim, D.S., when he was twelve. According to D.S.’s testimony, appellant and he first kissed around the time he turned thirteen. That was followed at other times by additional acts of improper touching, ultimately ending in sexual intercourse. At trial he described four separate acts of *635 intercourse which he narrowed to four separate time periods. However, on cross-examination, the defense impeached his recollection of the time each event occurred.
Because the issue we address deals mainly with appellant’s defense, we describe it in more detail. In her defense, appellant claimed that she was assaulted by D.S. No consensual contact occurred. She admitted to kissing D.S. on the lips when he requested it, after his having seen her father kiss her when he came to visit. She did not engage in any lascivious behavior voluntarily. She described two incidents of sexual behavior not culminating in intercourse initiated by D.S., which she claimed she immediately rejected. As to the intercourse, D.S. assaulted her on two occasions. The first time occurred about a week after she had a hysterectomy and was still recuperating from the surgery, which resulted in incisions and stitches throughout her abdomen. She had fallen asleep watching T.V. in D.S.’s bedroom, and she was awakened to D.S. attacking her. She did not report this, because D.S. was her son. The second time occurred about six months later, and after that she realized that D.S. needed help.
To help D.S. she contacted a therapist to counsel D.S. After several sessions with the therapist, she realized that D.S. had not told the therapist about his behavior. She then talked to the therapist to let him know that a sexual incident occurred between her and D.S. and that D.S. needed to talk about it. Believing that they would both be going through counseling on D.S.’s behavior, she began making notes as to the occurrences.
According to appellant’s defense, D.S. managed to see her notes of the encounters prior to his next visit to the therapist. When the therapist asked him whether there was something else D.S. needed to tell him, D.S. discussed having sex with his mom. The therapist called the abuse hotline, the Child Protection Team (“CPT”) interviewed D.S., and he admitted to having intercourse with his mother, which he described as consensual. D.S. was also interviewed by the police, who then interviewed appellant. She told them that D.S. had assaulted her but that she had not reported it. She expressed regret and thought that she should have done more to stop it. The officers arrested her, and she posted a bond.
In order to avoid further disruption of the lives of her children, including D.S., appellant agreed to stay out of the residence and permit the children to remain. Thus, D.S. was in the house with his siblings and appellant’s husband. The situation was strained, and D.S. often ate alone in his room.
Approximately two months after the incident and appellant’s arrest, D.S. called the original Assistant State Attorney in charge of the case, Stacy Ibarra, and told her that “things had been twisted” and that the story he had told before wasn’t true. He then denied having sex with his mother.' Confronted by Ibarra with the fact that his mother had admitted having sex with him (a fact that was only a half-truth — she admitted being assaulted and forced into intercourse with him), he then asked to come and see Ibarra. Ibarra also remembered that D.S. was worried about being kicked out of the house. Several days later, his father (appellant’s husband) drove him to meet with Ibarra. Without anyone else present, Ibarra interviewed D.S. for about 45 minutes. According to the deposition of Ibarra, D.S. was very concerned about his situation in the home and how difficult it was. She asked him about being pressured by the family, and he said that he felt indirect pressure. She asked whether he had told the truth to the *636 police and the CPT. After being reminded what he told them, he then told her that he had told the truth, but in fact there were more than two incidences of sexual intercourse. After the interview, the defense alleges that Ibarra told the father not to pressure D.S. or she would bring witness tampering charges. Shortly after that, D.S. left the home and went to live with someone else.
Ibarra did not reveal D.S.’s recantation and then his retraction of his recantation to the defense. Instead, the state filed additional charges against the appellant based upon D.S.’s allegations of additional sexual intercourse, although in the information the state did not differentiate them and charged them as multiple events within a long time frame. Ten months later, a new ASA in charge of the case found the notes and disclosed the conversations to the defense, who then took Ibarra’s deposition.
At trial, the state questioned D.S. on his conversation with Ibarra. He admitted having called her. In his testimony he maintained that he was receiving pressure from the family, particularly appellant’s father (D.S.’s adoptive grandfather), whom D.S. said told him to help his mother. Whatever his grandfather said, it would have been shortly after the appellant’s arrest in May, when the grandfather was visiting and not contemporaneous with the call to Ibarra two months later. Nevertheless, the state cast his recantation as caused by pressure from his family.
The defense sought to call both Ibarra and the new ASA to testify with respect to D.S.’s statements. The court denied the defense request, because on the stand D.S. had admitted making the statements. The defense continually sought to introduce the ASA evidence as dealing with motive and credibility and to show pressure from the state not to recant, as well as the state’s failure to disclose it contemporaneously, thwarting the defense’s case. The court denied all requests.
The trial was a contest of credibility between the appellant and D.S. No physical evidence was admitted to confirm or deny any of the information. The trial court granted a JNOV as to one sexual battery count. It then charged the jury on sexual battery but did not give the defendant’s requested instruction on her defense of assault. The court did instruct the jury that because of D.S.’s age, consent was not a defense to the charge. After hearing all of the evidence, the jury found the appellant not guilty of all sexual battery charges except the incident occurring after appellant’s hysterectomy for which it found her guilty. It also found her guilty of one count of lewd and lascivious conduct. After denying the motion for new trial, the court downwardly departed on her sentence to eighty months in prison. She appeals, and the state cross-appeals the downward departure.
Appellant first argues that the trial court abused its discretion by excluding testimony from both ASAs regarding the undocumented meeting with Ibarra. She claimed that the testimony was relevant to motive, credibility, and whether pressure was put on D.S. to retract his recantation, thus significantly impacting the credibility of the state’s case. In denying the right to call these witnesses, the court denied the defense its constitutional right to call witnesses in its defense.
We have noted the constitutional importance of permitting the defense to call witnesses critical to establishing reasonable doubt. In Vannier v. State, 714 So.2d 470, 471-72 (Fla. 4th DCA 1998), we explained:
As the Court said in Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. *637 1038, 1049, 35 L.Ed.2d 297 (1973), “[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense.” ... Our own supreme court has held that “where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant’s guilt, it is error to deny its admission.” Rivera v. State, 561 So.2d 536, 539 (Fla.1990).
As the supreme court noted in Rivera, however, admission is governed by rules of relevancy. 561 So.2d at 539. Here, the inquiry was relevant to the defense, the victim’s motive, and to show reasonable doubt in the state’s case.
What was important in calling Ibarra was not to relay what D.S. said to her, but rather to reveal both what she said to him and the context of the conversation. The defense’s theory in using these statements was to show coercion or manipulation by the state; show motive or bias in D.S.’s trial testimony; attack credibility; and provide reasonable doubt. The defense wanted to show coercion by Ibarra in the circumstances surrounding Ibarra’s unrecorded conversations with D.S., who was there to tell Ibarra that he had not told the truth about a pending criminal case — a serious issue. Further, Ibarra told him that appellant had admitted to sexual intercourse. While appellant admitted being assaulted, she never admitted consensual sex. Had the evidence been admitted, the defense could have suggested that D.S. was pressured to conform his statement to this half-truth told by Ibarra. In addition, D.S. was finding life at home difficult. Ibarra discussed his home situation and then threatened the appellant’s husband with witness tampering if he pressured D.S. Shortly thereafter, D.S. left the appellant’s home. This evidence may provide a motive for D.S.’s change of heart to conform his statement to what Ibarra wanted to hear. He may have wanted to be removed from a situation that he created by his statements and to have secured the protection of the state in doing so.
By testifying, D.S. placed his credibility at issue, including any bias or motive for testifying, particularly because Ibarra did not reveal to the defense that D.S. had changed his testimony, and therefore, D.S.’s motive for his trial testimony was the product of possible manipulation. Section 90.608(2), Florida Statutes (2009), allows a party to attack the credibility of a witness by “[s]howing that the witness is biased.” “ ‘The ability to expose an improper impetus for a witness’ testimony is an essential component of the right to a jury trial.’ ” Love v. State, 971 So.2d 280, 285 (Fla. 4th DCA 2008) (quoting Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996)). In Love, the court noted the defendant’s right to confront adverse witnesses, and that “the Sixth Amendment narrows a trial court’s discretion to exclude evidence of a witness’ bias under section 90.403.” Id. at 285-86. “[W]hen cross-examination alone is not sufficient to expose the possibility of improper motives in a witness, a defendant may present other impeachment testimony to demonstrate bias.” Hair v. State, 428 So.2d 760, 762 (Fla. 3d DCA 1983). Extrinsic evidence is admissible for collateral impeachment as “evidence which would discredit a witness by pointing out the witness’s bias, corruption or lack of competency.” Correia v. State, 654 So.2d 952, 954 (Fla. 4th DCA 1995) (citing Dempsey v. Shell Oil Co., 589 So.2d 373, 377 (Fla. 4th DCA 1991)). Here, the defense had the right to inquire and inform the jury of the entire situation in assessing D.S.’s credibility.
Finally, the state suggested in its testimony that the family was pressuring D.S. to change his story. Revealing the entire episode would permit the defense to sug *638 gest the opposite — that the state was pressuring D.S. to maintain his accusations rather than requiring it to drop the case against appellant.
Furthermore, we also agree with the appellant that the state’s questioning of D.S. and eliciting testimony about the alleged pressure from the family to change his testimony when he spoke to the ASA opened the door for testimony from Ibarra to explain the exact events. “We have held that when the state ‘opens the door’ to misleading testimony or has made specific factual assertions, the opposing party has the right to correct that information in order that the jury not be misled.” Campbell v. State, 2 So.3d 291, 295 (Fla. 4th DCA 2007) (citing Bozeman v. State, 698 So.2d 629, 630 (Fla. 4th DCA 1997)). Here, the defense was entitled to bring out Ibarra’s conduct to determine whether there was pressure from the family or whether Ibarra exerted pressure to keep D.S. from retracting his statements.
While we acknowledge that it is far from the norm to call a prosecutor to testify in a case, this is a very unusual case with very unusual facts and prosecutorial conduct. Nor do we determine that this evidence would actually be helpful to the defense. As the state points out, Ibarra’s testimony could actually hurt the defense’s attack on D.S.’s testimony. However, a defendant is entitled to produce relevant witnesses in her defense. It is not for us to interfere with the strategic decisions by counsel.
Because we are reversing for a new trial, we address the jury instructions. While we find no error in refusing the jury instruction on unanimous verdicts (as it is covered by Standard Instruction Jury Instruction 3.12(a)), as well as the court’s other instructions on each count as to when the crimes occurred, we do conclude that on retrial the appellant is entitled to her requested instruction on her theory of defense.[1] Appellant requested that the following instruction be given:
[Appellant] has asserted a defense that [D.S.] committed a sexual assault and or a sexual battery against her. It is a defense to the crimes charged if you find that [D.S.] committed a sexual assault and or a sexual battery against [appellant].
The defense patterned its instruction after a use of non-deadly force instruction.
“A defendant in a criminal case is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support the instruction.” Mitchell v. State, 958 So.2d 496, 499 (Fla. 4th DCA 2007) (citing Smith v. State, 424 So.2d 726, 732 (Fla.1982)). Failure to give a requested instruction is error when “ ‘(1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.’ ” Id. (quoting Stephens v. State, 787 So.2d 747, 756 (Fla.2001)). “When a trial court denies a defendant’s request for a special instruction, the defendant has the burden of showing on appeal that the trial court abused its discretion in *639 giving the standard instruction.” Brickley v. State, 12 So.3d 311, 313 (Fla. 4th DCA 2009) (citing Stephens, 787 So.2d at 755-56).
In this case, appellant claimed that the sexual intercourse was an assault on her against her will. That claim was supported by her testimony and her first statement to police. It would particularly apply to the charge on which she was found guilty, namely sexual intercourse shortly after her hysterectomy. It seems implausible that a woman who had a complete hysterectomy would be soliciting sex less than a week after a major operation.
The standard instructions did not adequately cover this defense. The court instructed the jury that an element of the offense of sexual battery of a minor was that the “appellant” committed an act upon [D.S.] in which, A, the sexual organ of [D.S.] penetrated or had union with the vagina of [appellant]. The court also instructed the jury that “It is not a defense that [D.S.] was willing to engage in these acts which would constitute sexual battery or consent to engage in such acts.”
From the instructions, the jury could have concluded that D.S. could not “consent” to a sexual act even if he was the aggressor. Therefore, the jury could find appellant guilty even if she was raped. The defense instruction was necessary to clarify the instructions so that the jury was not misled by the standard instructions. A defendant is entitled to a self-defense instruction where the evidence supports a claim that the victim was the aggressor. See, e.g., Deveaugh v. State, 575 So.2d 1373 (Fla. 4th DCA 1991) (holding that “instruction on justifiable use of non-deadly force was of the essence of appellant’s defense and clearly should have been given”). The instruction requested in this case is akin to a self-defense instruction. Under the very unique facts of this case, we hold that the instruction should have been given.
Finally, we agree with appellant that her conviction for lewd and lascivious conduct cannot stand, because the information alleged that the appellant committed “numerous” unspecified lewd acts on D.S. within a thirty-month time span. Appellant objected to this broad time span both in motions prior to trial and again to the trial court’s submission of this charge to the jury. We acknowledge that prosecutors are given some latitude in charging child sexual abuse because of the nature of crimes. Whittingham v. State, 974 So.2d 616, 618-19 (Fla. 4th DCA 2008). However, where charging documents containing multiple charges have been allowed are usually cases where no objection has been made to the charge either pre-trial or during trial. Thus, we have considered whether the issue presents a fundamental error, which we have concluded it does not. As we noted in Whittingham,
Because the state may charge a defendant in child sexual abuse cases in a manner not permitted in other types of criminal cases, expanding time periods for the commission of offenses and grouping types of offenses together, we hold that it is not fundamental error to submit such a charge to the jury. A defendant must object at trial to submission to the jury of an aggravated charge to preserve the objection. Otherwise, the prosecution may assume that by failing to challenge the charging pattern, the defendant has acquiesced in the state’s determination to charge all of the same type of acts within a single count.
Id. In this case, having repeatedly objected to the charging document, before trial in her motions to dismiss and during trial in her motion for judgment of acquittal and at the charge conference, appel *640 lant’s constitutional right to a unanimous jury was compromised because of the state’s inclusion of multiple possible lewd acts within one count. See Perley v. State, 947 So.2d 672, 674-75 (Fla. 4th DCA 2007) (reversing on constitutional grounds when there were two potential incidents constituting the crime of escape for one charged crime). While in Whit-tingham we distinguished Perley on the bases that the prosecutor in Perley made an “affirmative invitation to the jury to find guilt by essentially a non-unanimous verdict” and that Perley was not a child sexual abuse case, Whittingham required a fundamental error analysis, which this case does not, as appellant voiced her objection to the charging document before and during trial.
In fact, and similar to Perley, the prosecutor contended that the lewd and lascivious conduct count was in essence a catch-all charge, intended to cover all the lewd and lascivious conduct incidents within one count. “[W]here a single count embraces two or more separate offenses, albeit in violation of the same statute, the jury cannot convict unless its verdict is unanimous as to at least one specific act.” Robinson v. State, 881 So.2d 29, 31 (Fla. 1st DCA 2004). Here, as in Perley, it is impossible to determine on which lewd act the jury found appellant guilty. The appellant objected to this method of charging, and from the evidence at trial it is apparent that the charge could have been narrowed both as to time frame and the nature of the act. Of course, as we noted in Whittingham, this can act detrimentally to the defendant because, were the prosecutor to charge each discrete act, “the defendant is subject to substantially greater penalties and potential consecutive sentencing on each charge.” 974 So.2d at 619. As we did in Perley, however, we reverse the conviction for lewd and lascivious conduct and remand for the state to elect one act upon which to try the appellant.
We affirm without discussion all remaining issues in the appeal. Because of our reversal of the conviction and sentence, we do not address the issue on cross-appeal.

Reversed and remanded far proceedings in accordance with this opinion.

STEVENSON and GROSS, JJ„ concur.

. Technically, the request for instruction was not properly preserved — the requested instruction was part of the packet of requested instructions, but it was not addressed at the charge conference. Although after the jury retired defense counsel did make an objection to the court’s failure to give its requested instructions, including its theory of defense instruction, which the court "noted,” because the court was never presented with the requested jury instruction, the defense could not object to the court’s failure to give it. However, we address the issue for purposes of retrial.