*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-007

NOVEMBER TERM, 2012

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Leanne Gorman | } | DOCKET NO. 1622-12-10 Wncr |

Trial Judge: Howard E. Van Benthuysen

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a judgment of conviction, based on a jury verdict, of domestic assault and simple assault. She contends the trial court: (1) denied her right to present a defense by excluding evidence relevant to motive; and (2) erroneously admitted irrelevant and unfairly prejudicial evidence contained in a Facebook message. We affirm.

The record evidence may be briefly summarized. Additional material facts will be set forth in the discussion which follows. One of the assault victims, A.C., testified that she had recently become romantically involved with Colby Rowell when defendant, Rowell's former girlfriend, showed up at her place of work in mid-December 2010 and told her to stay away from him. About a week later, on December 22, 2010, A.C. testified that she received a message on Facebook from defendant stating, "I could ruin your face even more and put you in the ER in a matter of seconds, but I'm done fighting for him . . . he's not worth it."

A.C. spent the next evening at Rowell's apartment in Barre. She recalled that defendant telephoned Rowell many times that evening, and that she was awakened later that night by a sound of loud banging at the door. Rowell went to the door, and A.C. heard defendant "screaming and banging" on the door and Rowell telling her that she needed to leave.

Defendant managed to enter the apartment and began looking for A.C., who wrapped herself in a sheet and ran into the bathroom. A.C. recalled that defendant then began pushing and banging on the bathroom door while cursing and threatening to slit A.C.'s throat. Defendant managed to break open part of the door, at which point Rowell wrestled her to the ground and A.C. ran out of the bathroom and out of the residence to the street. She found an unlocked apartment nearby and entered. Two of the apartment's residents testified that they heard a noise and discovered A.C. wrapped in a blanket hiding under the dining room table. She was

hyperventilating and crying, and told them that someone was trying to kill her. The residents called the police, who arrived shortly thereafter.

The investigating officer noted that the bathroom door in Rowell's apartment was broken in half. He interviewed both defendant and Rowell, who reported—as he also later testified—that defendant had pushed her way into the apartment, struck him repeatedly as she tried to find A.C., and broke the bathroom door trying to reach her. He stated that he was ultimately able to subdue her sufficiently to allow A.C. to escape.

Defendant was arrested and charged with one count of domestic assault against Rowell and one count of simple assault against A.C. Defendant testified on her own behalf. She claimed that she went to Rowell's apartment that evening solely because she was concerned about the safety of her infant son, who was staying with Rowell. She explained that she was afraid another woman named C.H., whom she identified as Rowell's current girlfriend, was going to come to Rowell's house with another man and create a disturbance. Her testimony was that she feared Rowell's "current girlfriend and the man that she was with were going to show up at his house and cause an altercation with [A.C.] and Mr. Rowell in front of my son." She claimed that Rowell attacked her when she tried to take her son out of the apartment, and that the bathroom door was damaged during the attack. In rebuttal, the State recalled the investigating officer to testify that defendant had not "mention[ed] any specific concern that [C.H.] and her boyfriend would" appear that evening.

The jury returned guilty verdicts on both counts. This appeal followed.

Defendant first contends that the trial court denied her constitutional right to present a defense by "excluding all evidence about why she went to [Rowell's] residence." Defendant disputes the court's pretrial ruling in limine refusing to allow C.H. to testify as to her relationship with Rowell and her phone calls to defendant while maintaining surveillance on A.C.'s presence at Rowell's residence. Defendant proffered that the calls led her to worry about a confrontation brewing with Rowell, A.C. and C.H. at the residence in the presence of her child. The court found no probative nexus between the messaging and the motivation claimed, and excluded the testimony as risking a trial—within the assault trial—over Rowell's philandering. Exclusion of C.H."s testimony, argues defendant, deprived her of evidence showing her motive in going to Rowell's residence to protect her son

The State maintains that defendant later expressly disclaimed any intent to call C.H. as a witness. Defense counsel explained that she wanted only to elicit testimony from defendant that she went to Rowell's apartment because of C.H.'s telephone messages that she was driving around Rowell's house with a male friend and that A.C. was there with Rowell.[1] The court again

---

[1] The following colloquy shows the nature of defendant's proffer and the court's ruling:

The Court: "Is that—that's your whole argument . . . to be allowed to put on [C.H.] as a witness, or . . .

2

noted, however, that there was no proffer that the telephone messages themselves contained any threat, and that there was a "huge missing link in terms of relevancy." Nevertheless, the court ruled that defendant was not precluded from inquiring about defendant's motive in going to Rowell's house that evening.

Defendant argues that this exchange was no disclaimer of her earlier effort, denied by the court, to introduce similar evidence through C.H.'s testimony. She posits that rather than relitigate the court's in limine ruling, counsel was abiding by the court's ruling in not calling C.H. as a witness. The record can be reasonably read to support defendant's position that her proffer at trial was not a waiver of her exception to the court's earlier ruling.

The court's earlier ruling was, however, not an abuse of discretion. The relevance of C.H.'s proposed testimony that she telephoned defendant about watching Rowell's home with a male friend was not evident. The call or calls from C.H., as described and received some two hours before defendant's alleged intrusion into the residence, included no threat or suggestion of precipitous action at the residence by C.H. or her companion. There was little, if any, basis to perceive the testimony of C.H. as tending "to make the existence of" the defendant's claimed motive "more probable. . . than it would be without the evidence" as necessary for relevance. V.R.E. 401. The court's in limine ruling did not deprive defendant of her proposed protective-motive defense. As summarized above, this was precisely defendant's testimony; she testified that she was afraid Rowell's "current girlfriend and the man that she was with were going to show up at [Rowell's] house and cause an altercation with [A.C.] and Mr. Rowell in front of my

---

Defense Counsel: "No, Your Honor. It's just to be able to ask Ms. Gorman if she takes the stand why she went to the apartment."

Later, during the same colloquy, the same point was made:

The Court: "So you're intending to call [C.H.] to say that she called [defendant] to tell her that [A.C.] was at Mr. Rowell's apartment?

Defense Counsel: "Your Honor, at this point if [defendant] testifies I would just get the evidence through [defendant] what was—why did you go to the apartment.

And again:

The Court: "Perhaps I misunderstood your offer. I thought you were offering [C.H.] to talk about her tipping off [defendant]."

Defense Counsel: "No. I just—when—if [defendant] takes the stand . . . I would ask to be able to ask her why she went to the apartment that day."

The Court: "Oh, that's—I've never precluded you from doing that."

3

son." She reiterated the testimony later, explaining that she went to the house because of a concern "[t]hat there was going to be an altercation with [Rowell and A.C. and Rowell's] girlfriend, and a gentleman that she had with her." "That was my concern," she testified, "that that was going to happen in front of my son," and so she went there "to get [her son] out of there."

Thus, the record does not support defendant's claim that the court "categorically exclud[ed] all evidence about why she went to [Rowell's] residence." On the contrary, defendant clearly and repeatedly testified that she was concerned there would be a confrontation involving Rowell, A.C., C.H., and a male companion of C.H., and that her motive in going to the house was to remove her child from this potential situation. As further support for her claim, the court admitted a Facebook exchange between defendant and A.C. in which defendant expressed concern about her son being present when A.C. was visiting Rowell.[2]

Nor has defendant shown that the court abused its discretion in preventing her from otherwise exploring in any greater detail the nature of defendant's relationship with C.H. See State v. Shippee, 2003 VT 106, ¶ 13, 176 Vt. 542 (mem.) (trial court is accorded broad discretion in weighing probative value against prejudicial effect, and its decision will not be disturbed absent showing that court completely withheld its discretion or exercised it on clearly untenable grounds).

Similarly, we discern no error in the court's sustaining an objection when defendant was asked about the content of C.H.'s telephone messages. As noted, the messages communicated no explicit or implicit threat or intent to confront Rowell or A.C., and were, therefore, irrelevant. Thus, defendant's reliance on Smith v. State, ___ So. 3d ___, 2012 WL 3822115, at * 4 (Fla. Dist. Ct. App. Sept. 5, 2012), which reaffirmed the general rule that "a defendant is entitled to produce relevant witnesses in her defense," is misplaced. Accordingly, we find no merit to the claim that the Court committed prejudicial error by precluding C.H. from testifying, or violated defendant's constitutional right to present a defense.

Finally, defendant contends the trial court erred in admitting the Facebook messsage. She asserts that the message was irrelevant because it did not "rise to the level of a threat." The court ruled that the message was relevant and admissible on the issue of defendant's motive in going to Rowell's apartment as showing a prior hostility to A.C. and rebutted defendant's claim that her sole motive was to protect her son. Although defendant's assertion that she could ruin A.C.'s face and put her in the emergency room ended with a declaration that defendant was finished fighting for Rowell, the court could reasonably conclude that the statement as a whole,

---

[2] The Facebook exchange in question was as follows:

Defendant: "So he has you over when my son is there? I'm kinda not ok with that."
A.C: "I'm sorry—I understand that—I'm a mother as well. If you're uncomfortable with that I'll respect it."

in the context of the complainants' version of events, showed sufficient animus relevant to the issue of defendant's motive.

Defendant further maintains that any probative value in the message was outweighed by the potential prejudice from its "uncivil tone" and suggestion that defendant would "engage in ill-conceived displays of bravado." The court's judgment in this regard is accorded substantial deference. See State v. Jones, 2008 VT 67, ¶¶ 14-15, 184 Vt. 150 (noting that we defer to trial court's decision to admit prior bad act evidence, and upholding court's decision admitting evidence of defendant's prior abuse of victim to show motive and intent); Shippee, 2003 VT 106, ¶ 13 (court's balancing of probative value against prejudicial effect will not be disturbed absent clear abuse of discretion). Here, where defendant's motive in going to the house was an important issue at trial, the court could reasonably conclude that the probative value of the message in showing defendant's hostility towards A.C. outweighed any undue prejudice from an "uncivil tone" alone. Moreover, while this evidence conveyed a threat against the complainant in this case, it did not reflect any general propensity for assault.

Finally, defendant contends that the court abused its discretion in excluding other Facebook exchanges between A.C. and defendant concerning Rowell's womanizing. As the trial court found, these additional statements did not appear reasonably related to defendant's claimed motive and involved potentially prejudicial extraneous matter. Accordingly, we find no error, and no basis to reverse the judgment. See State v. Hemond, 2005 VT 12, ¶¶ 7-8, 178 Vt. 470 (mem.) (noting that trial court's decision on whether admission of one part of writing "in fairness" requires admission of entire written statement will be reversed only where court withheld or abused discretion (quoting V.R.E. 106)).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

5