# Third District Court of Appeal

## State of Florida

Opinion filed December 13, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-893
Lower Tribunal No. 13-8253
_____

**Torino Antwan Bentley,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Stacy D. Glick, Judge.

Woodward & Reizenstein and Philip L. Reizenstein, for appellant.

Pamela Jo Bondi, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before EMAS, LOGUE and LINDSEY, JJ.

EMAS, J.

**INTRODUCTION**

Torino Antwan Bentley appeals from his conviction and sentence for lewd and lascivious battery on a child (twelve years or older but less than sixteen years of age), in violation of section 800.04(4)(a), Florida Statutes (2013).[1]  We find no error and affirm.

**BACKGROUND AND PROCEDURAL HISTORY**

On April 9, 2013, a City of Miami Police Commander, assigned to the State Attorney's Human Trafficking Task Force, was called by a woman who reported that her thirteen-year-old daughter had run away.  The Commander conducted an investigation which led him to a phone number from which the victim had recently called.  That phone number led the Commander and another officer to Bentley's address.

When the officers arrived at the house, Bentley and his father were home. The officers advised they were looking for a thirteen-year-old girl who they believed was in danger, and that they were aware this girl had used Bentley's phone.  Bentley first told police that he had met the girl the night before at a

---

[1] That subsection provides in pertinent part:

(4) Lewd or lascivious battery.--
(a) A person commits lewd or lascivious battery by:
1. Engaging in sexual activity with a person 12 years of age or older but less than 16 years of age . . . .

convenience store, and let her use his phone. When the officers asked Bentley if they could search the home for the girl, Bentley became nervous, but nevertheless consented. When the officers entered Bentley's bedroom, they noticed the bed skirt was moving. Upon being prompted by one of the officers, the victim emerged from under the bed naked. The officers noticed that there was blood everywhere, including on the bed, and bloody items in a plastic grocery bag hanging from the bedroom door.

The victim told the officers that she had run away from home, and was tired and hungry when she encountered Bentley at a corner store the previous evening. Bentley was in his car, and asked the victim if she needed a ride and if she wanted to "chill." The victim said yes, and got in Bentley's car. Bentley took her to his house, and into his bedroom, and asked her if she was hungry. He gave her some fries that were in the bedroom, and then she used his phone to call her mom and her aunt. The victim said she had no place to go, and did not want to go to her aunt's house because she had run away and her aunt did not want to get into trouble.

The victim took a shower at Bentley's house, and put on clothes he gave her. When she laid down to go to sleep, Bentley told her he wanted to have sex. She had sex with him twice, both times with a condom, which Bentley then put in a plastic bag. When the victim woke up in the morning, Bentley told her to hide

3

under the bed, which she did until the police told her to come out. The victim told police that the stains on the bed were because she was menstruating.

Bentley later admitted that he lied to the police about the victim being at the house because he was scared. He told the officers that he met her the night before, and she did not have a place to stay, so he allowed her to come home with him, but he did not know she was thirteen, and thought she was eighteen. He admitted having sex with her. Bentley was arrested and later charged by information with lewd and lascivious assault on a child, older than twelve and younger than sixteen

Prior to trial, defense counsel sought production of records from a prior case involving the victim, in which she was a victim of human trafficking. However, the State objected, contending that the defense should not be provided these documents because they were completely unrelated and irrelevant to Bentley and the present case. Defense counsel sought these documents in an attempt to establish a defense, and referred to the fact that the victim was a prostitute. The court advised defense counsel it could not cross examine the victim regarding her status as a <u>victim</u> of crime in another case, and that the State was not obligated to provide the documents sought. Further, the court instructed defense counsel not to "refer to her as a prostitute."

The case proceeded to trial and, before the jury was brought into the courtroom, the State moved in limine to prevent defense counsel from going into

4

specific instances of prior consensual sexual activity between the victim and any person other than Bentley. Defense counsel objected, arguing its defense was that the victim was a prostitute. The court reiterated its earlier ruling and prohibited defense counsel from referring to the thirteen-year-old victim as a prostitute and prohibited counsel from eliciting any evidence of prior consensual sexual activity between the victim and any person other than Bentley. The court also prohibited the introduction of any evidence that the victim was previously a victim of human trafficking. Following trial, Bentley was convicted as charged of lewd or lascivious battery. The trial court sentenced Bentley to thirty-six months in prison.

## ANALYSIS

Bentley raises three claims on appeal. First, Bentley asserts that the trial court erred in its finding that the State provided a genuine race-neutral and gender-neutral reason for its peremptory challenge of a prospective juror. Upon our review of the record, and applying an abuse of discretion standard, see Files v. State, 613 So. 2d 1301 (Fla. 1992), we hold that the trial court did not abuse its broad discretion in permitting the peremptory challenge and in its determination of genuineness.

The State had initially moved the trial court to strike this juror for cause. The trial court denied this for-cause challenge, determining that the juror's responses to questions during voir dire did not justify striking the prospective juror

5

for cause. See Fla. R. Crim. P. 3.300(c) and § 913.03, Fla. Stat. (2015) (addressing challenges of prospective jurors for cause). That determination by the trial court did not, however, foreclose the State's subsequent use of a peremptory challenge to strike this same prospective juror. In exercising its peremptory challenge, the State gave race- and gender-neutral reasons, which the trial court found to be genuine. We find no error in this determination.

Second, Bentley asserts that the State made improper closing argument, requiring a new trial. However, defense counsel failed to preserve this issue by making a contemporaneous objection, and therefore, has waived the issue on appeal. Bell v. State, 108 So. 3d 639, 650 (Fla. 2013); Brooks v. State, 762 So. 2d 879, 898 (Fla. 2000). The sole exception to the contemporaneous objection requirement is where the unobjected-to arguments rise to the level of fundamental error. Id. at 899. To constitute fundamental error, "the error must 'reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" State v. Delva, 575 So. 2d 643, 644-45 (Fla. 1991) (quoting Brown v. State, 124 So. 2d 481 (Fla. 1960)). The brief comments complained of here do not approach this level of error. In fact, a fair reading of the comment, in context, indicates that it was made in fair reply to the arguments made by the defense in its closing.

6

Finally, Bentley argues that the trial court improperly limited its defense by restricting cross-examination and excluding evidence on his theory of defense. This claim, reviewed for an abuse of discretion, <u>King v. State</u>, 89 So. 3d 209 (Fla. 2013), is without merit. Bentley was charged with lewd and lascivious battery upon a thirteen-year old victim. The ostensible theory of defense, as best we can surmise from the record,[2] is that the victim had previously been a victim of human trafficking, where she was "pimped out" as a prostitute; that Bentley (who had no involvement in the prior acts of human trafficking) met the victim "in the street" and offered her food, a place to stay, and money, all of which the victim readily accepted; that he did not "force" the victim to engage in sex and that in fact it was the thirteen-year old victim, rather than Bentley, who initiated the sexual activity.

Prior to the trial, the defense announced its intent to cross-examine the victim on the fact that she had been a prostitute as a result of a prior unrelated instance of human trafficking, and that she was the "sexual aggressor" who initiated the sexual activity with Bentley. The trial court properly exercised its discretion in excluding evidence of the victim's alleged unrelated acts of prostitution as a victim of human trafficking, as this was not relevant to, or probative of, the offense charged, a valid defense to the charge, or the issues in dispute.[3] <u>See, e.g.</u>, <u>Carlyle v. State</u>, 945 So. 2d 540 (Fla. 2d DCA 2006).

---

[2] We note that Bentley's appellate counsel did not represent Bentley during the trial.

The trial court also properly prohibited the defense from introducing evidence that the victim was the "initiator" of the sexual contact, as consent is not a defense to the crime charged. See § 800.04(2), Fla. Stat. (2013) (providing that "[n]either the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section"); Khianthalat v. State, 935 So. 2d 583, 586 (Fla. 2d DCA 2006) (consent is not a defense to crime of lewd and lascivious battery on a child twelve years of age or older but less than sixteen years of age); State v. Raleigh, 686 So. 2d 621 (Fla. 5th DCA 1995). Accord, Bullington v. State, 616 So. 2d 1036, 1039 (Fla. 3d DCA 1993) (reversing conviction for sexual battery (under section 794.011) because the State failed to prove lack of consent, but noting that, had the State charged defendant with a crime under section 800.04, the evidence would have sustained the conviction, since under that statute "neither the victim's consent nor the defendant's belief that the victim is sixteen or older is a defense to the crime charged.")

Bentley contends he was entitled to introduce this testimony as part of his theory of defense, relying upon Smith v. State, 98 So. 3d 632 (Fla. 4th DCA 2012). However, Bentley's reliance on Smith is misplaced. In that case, Ms. Smith was charged with several counts of sexual battery on a child and lewd or lascivious molestation upon a child. The victim was D.S., Smith's adoptive child. It was

---

[3] Nevertheless, at trial, defense counsel elicited significant testimony that the victim had previously been a victim of human trafficking.

alleged that the unlawful contact began with Smith kissing D.S. when he was thirteen years old, followed by acts of improper touching and ending ultimately in acts of sexual intercourse.

Smith admitted to kissing D.S., but she denied engaging in any lewd or lascivious molestation or sexual battery of D.S. Her theory of defense was that she had been sexually assaulted by D.S. against her will. Smith testified at trial that she had rejected incidents of sexual behavior initiated by D.S., and that it was D.S. who committed acts of sexual battery upon her. Smith testified that the first act occurred when she had fallen asleep watching television and was awakened to D.S. sexually attacking her. She did not immediately report this, because D.S. was her son. Six months later, however, he sexually assaulted her a second time, forcing her to have intercourse with him. At this point Smith contacted a therapist to get help for D.S., realizing that he needed counseling for his behavior. Smith introduced other evidence in support of her testimony, and in support of her theory of defense.

At the conclusion of the evidence, Smith requested that the trial court instruct the jury:

> [Smith] has asserted a defense that [D.S.] committed a sexual assault and or a sexual battery against her. It is a defense to the crimes charged if you find that [D.S.] committed a sexual assault and or a sexual battery against [Smith].

The trial court denied the requested instruction, and the Fourth District reversed, holding that Smith was entitled to the requested instruction on her theory of defense, a defense which our sister court described as a claim "that the sexual intercourse was an assault on her against her will." Id. at 639. The Fourth District concluded that, in the absence of the requested instruction on Smith's theory of defense, "the jury could find appellant guilty even if she was raped." Id.

Here, by contrast, Bentley's "theory of defense" was *not* that the victim committed a sexual battery upon Bentley against his will. Rather, it was in the nature of a consent or quasi-consent defense, which, as previously discussed, is not a valid defense to the charged offense of lewd and lascivious battery upon the thirteen-year-old victim. It is irrelevant that the victim was not "forced" to go home with Bentley, was not "forced" to eat at his house or sleep in his room, was not "forced" to have sex with him (whether or not in exchange for food, shelter or money). In like fashion, whether the victim allegedly "initiated" the sexual activity (to which Bentley was a willing participant) was legally irrelevant. Bentley did not testify at the trial or seek to present any evidence that the sexual activity engaged in was "an assault on [him] against his will." Id. This case is therefore distinguishable from Smith and the trial court committed no error in excluding the proffered evidence.

Affirmed.