678 So.2d 890 (1996)
Rondy JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1905.
District Court of Appeal of Florida, Fourth District.
August 21, 1996.
*891 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee; and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Rondy Jones appeals his conviction and sentence for burglary of a dwelling and petit theft, and also a sentence imposed for an unrelated charge of aggravated battery arising after his conviction of a violation of probation.
In 1993 appellant pled no contest to aggravated battery. He was adjudged guilty of the offense and placed on probation for ten years, with a special condition that he observe a 9:00 p.m. curfew. In 1994 the state charged appellant with burglary of a dwelling and petit theft. These two substantive crimes, along with appellant's failure to abide by the curfew, formed the basis of violation of probation charges against him.
Valerie Golden was a key witness against appellant at trial. On the night of the incident, Golden was home with her boyfriend, Lonnie Melvin, and her two children. Around 1:00 a.m., while in her bedroom, Golden heard noises in the kitchen. She looked out the back window and noticed a *892 man, but did not consider it unusual since people often used the sidewalk there. Upon hearing more noises, Golden went to the kitchen. There she saw a man leaning halfway through the window with a figurine in his hand. At trial, Golden said that she looked at the man's face and recognized him as appellant, a man known to her as "Gene." She screamed and woke her boyfriend, Melvin, telling him only that "someone" was coming through the kitchen window.
Melvin testified that he ran outside, where he saw two men walking on the sidewalk. When he called to them to bring his things back, the men separated. One went towards a canal and the other remained on the sidewalk. Melvin followed the man on the sidewalk, who started to run. He recognized this man as appellant, a man whom he knew. When Melvin caught him, appellant denied knowing anything about the burglary. After Melvin threatened him with a stick, appellant showed him the contents of a bag he was carrying, which contained none of Melvin's or Golden's property, but only appellant's curl activator and perfume.
The police arrived and took appellant back to the apartment for Golden to eyeball. One of the officers told Golden that "her old man had caught a young black male and could she come out here and identify him as the one that was in the window." She promptly identified appellant as the man in the window.
The only items missing from the apartment were some figurines from the kitchen window sill. They were never recovered.
Appellant testified that on the night of the incident, he was walking home from his sister's house by himself. He admitted to his 13 prior felony convictions and pointed out that "when I did committed crimes [sic], every police that ever arrested me can tell you that I was always by myself; I never did anything with nobody." When Melvin began chasing him with a stick, appellant ran away, yelling for someone to call the police.
Appellant and Melvin had known each other since 1984, when both worked for the city. Appellant said that Melvin had once thrown bottles at him after a dispute. The trial court precluded appellant from testifying in detail about the dispute: (1) that the feud arose when appellant told Melvin that he knew Melvin was "going with" two homosexual friends of appellant's; (2) that in 1992, Golden asked appellant whether Melvin had any relationships with men and appellant confirmed that he did; and (3) two days after this disclosure Melvin went to appellant's house and threatened to kill him.
After hearing readbacks of Golden's, Melvin's and appellant's testimony, the jury returned guilty verdicts as to each count of the information. Prior to the verdict, the court ruled that appellant violated his probation for failing to follow his curfew.
The trial court erred in preventing appellant from telling about his past relationship with Golden and Melvin, since such testimony was evidence of the witness' bias, admissible under section 90.608(1)(b), Florida Statutes (1995).
Section 90.608(1)(b), provides that any party may attack the credibility of a witness by "[s]howing that the witness is biased." Included in the types of matters that demonstrate bias are prejudice, interest in the outcome of a case, and any motivation for a witness to testify untruthfully. Hair v. State, 428 So.2d 760, 762 (Fla. 3d DCA 1983); Harmon v. State, 394 So.2d 121, 125 (Fla. 1st DCA 1980). The ability to expose an improper impetus for a witness' testimony is an essential component of the right to a jury trial. See Holt v. State, 378 So.2d 106, 108 (Fla. 5th DCA 1980) (exposure of witness' motivation in testifying is "proper function of constitutionally protected right of cross-examination"); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In exploring the types of wrongful motives which influence witnesses, Florida courts have recognized that a criminal defendant's dealings with or relationship to a third party could bias a witness' testimony against him. For example, Davis v. State, 527 So.2d 962, 963 (Fla. 5th DCA 1988), involved a defendant prosecuted for molesting his daughter. The trial court restricted cross examination of the daughter about a burglary complaint filed against the daughter's boyfriend. The fifth district reversed, holding that this inquiry properly went to the daughter's motivation *893 to retaliate against her father because of his desire to eliminate the boyfriend as a friend. Similarly, in Hannah v. State, 432 So.2d 631 (Fla. 3d DCA 1983), a witness identified a defendant as the robber of a Pizza Hut. The court found reversible error in the refusal to allow evidence that the defendant's cousin had once accused the eyewitness of stealing, an incident which supplied a vengeful motive for the eyewitness' identification of the defendant. See also O'Hara v. State, 642 So.2d 592, 594 (Fla. 4th DCA 1994); Harmon v. State, 394 So.2d 121, 124-25 (Fla. 1st DCA 1980); Fannin v. State, 581 So.2d 974, 976 (Fla. 1st DCA 1991).
To introduce evidence about the prior relationship between appellant, Melvin, and Golden, it was not necessary for the defense attorney to have first questioned the prosecution witnesses about this topic. Alford v. State, 47 Fla. 1, 36 So. 436 (1904); Hunt v. Seaboard Coast Line R.R. Co., 327 So.2d 193, 195 (Fla.1976). The Florida Supreme Court has held that
the hostility of a witness towards a party against whom he is called may be proved by any competent evidence, either by cross-examination of the witness or by the testimony of other witnesses, and ... it is not necessary that the witness should be first examined as to his hostility before calling other witnesses.
Alford, 47 Fla. at 8, 36 So. at 438.
Appellant's defense was that his statements about Melvin had provoked a violent, bitter response from Melvin and that the residue of bad feelings from the incident predisposed Golden to misidentify him as the burglar. Appellant was entitled to have the jury hear such evidence to consider the nature of the relationship between appellant and the state's witnesses. That this testimony showing bias included allegations of Melvin's homosexuality does not disqualify it from admission under section 90.403, Florida Statutes (1995). See Sias v. State, 416 So.2d 1213, 1218 (Fla. 3d DCA), rev. denied, 424 So.2d 763 (Fla.1982); Arias v. State, 593 So.2d 260, 264 (Fla. 3d DCA 1992). The exclusion of the evidence of bias impacted this prosecution, because the state's case stood or fell on the jury's assessment of the eyewitness' credibility. For this reason, there can be no finding of harmless error under State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
As to the violation of probation, it is undisputed that appellant violated his curfew. Evidence of that substantive violation alone supplied a sufficient factual basis for revocation of probation. See Williams v. State, 573 So.2d 124 (Fla. 4th DCA 1991).
The judgment and sentence for burglary of a dwelling and petit theft are reversed and the case is remanded for a new trial. The sentence arising from the violation of probation is affirmed.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
KLEIN and PARIENTE, JJ., concur.