971 So.2d 280 (2008)
Robert LOVE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-785.
District Court of Appeal of Florida, Fourth District.
January 9, 2008.
*283 Carey Haughwout, Public Defender, and Anthony C. Musto, Special Assistant Public Defender, Hallandale Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, Julie D. Lindahl and Diane F. Medley, Assistant Attorneys General, West Palm Beach, for appellee.
GROSS, J.
Many criminal trials are like boxing matches, where the state and defense trade punches within defined rules of engagement. This case resembled an ultimate fighting video game, without rules, where the goal of each side was to win at any cost. Because of one fundamental error in the jury instructions and three prejudicial evidentiary errors, we reverse. See § 924.051, Fla. Stat. (2006).
Robert Love appeals five convictions  two counts of battery on a police officer, one count of resisting an officer with violence, one count of driving with a suspended, canceled or revoked license, and one count of possession of marijuana in excess of 20 grams. All crimes occurred during a traffic stop in Pahokee.
This was not the garden variety police-citizen encounter. Love is a community activist who frequently criticized the Pahokee police department in city commission meetings. As described in his brief, Love's "defense was that the Pahokee police department used the traffic stop in this case as an opportunity to beat him because of his complaints about them and his assertions that they were corrupt."
The state's version of the case began when Officer George Hachigian stopped Love for driving at night without headlights on. After seeing Love's name on his driver's license, the officer radioed for backup. Fifteen seconds later, Officer James Levey arrived at the scene. Over his police radio, Officer Hachigian learned that Love's license was suspended. Officer Hachigian did not know if Love knew about the suspension, so he contemplated issuing a citation for the infraction of driving with a suspended license without knowledge. See § 322.34(1), Fla. Stat. (2006). However, according to Officer Levey, Love admitted to knowing about the suspension. Corporal Linning Peters, the shift's commanding officer, ordered Officer Levey to arrest Love for the crime of knowingly driving with a suspended license. See § 322.34(2), Fla. Stat. (2006).
According to the officers, when they attempted to make the arrest, Love slapped the handcuffs out of Officer Levey's hands and pushed him down. He then ran away. Officer Hachigian jumped on Love's back. Officer Levey hit Love with a baton, knocking him down. While Love was tussling with Officer Hachigian on the ground, Officer Levey hit Love several times with the baton and his fist. Within seconds, the officers handcuffed Love and the struggle ended. Soon, Corporal Peters came to the scene. Several sheriff's deputies arrived to help control the crowd that had formed during the arrest.
After the arrest, Officer Hachigian conducted an inventory search of Love's car and found a bag containing marijuana. The state presented evidence that a DNA *284 profile taken from the bag was consistent with that of Love.
Love's version of events differed from that of the officers. Love said that he was told he was under arrest and ordered to put his hands on the car. He asked why he was being arrested. Officer Levey knocked him to the ground, struck him with the baton, and hit him in the knee. Officer Hachigian jumped Love and choked him while Officer Levey continued to beat him with the baton. Love insisted that he did not resist the arrest, threaten the officers, run, raise his hand to them, or knock handcuffs out of Officer Levey's hands.
The defense called witness Mila Ivery who observed the incident from across the street. As she left church after attending a service, Ivery saw Love talking to one policeman when another officer approached and hit Love with a stick. Love did nothing to incite the officers; he was just talking when the violence began. Love did not fight back. When he went to the ground, the officers hit him and beat "him in the face." At this point, a third officer arrived and pointed a gun at the crowd in which she was standing.
On cross examination, the prosecutor established that Ivery saw the encounter along with a group of ten to twelve people outside of the church. Mrs. Ivery said that she regularly saw these people in church on Friday nights. Over objection, the prosecutor had Ivery agree that none of these potential witnesses were outside the courtroom prepared to testify. During closing argument, the prosecutor commented on Love's failure to produce any of these witnesses to corroborate Ivery's version of the facts.
It was error to allow the state to attack Love for failing to produce additional witnesses to back up Ivery's story. In a criminal case, the burden is on the state to prove a crime beyond a reasonable doubt; "a defendant has no obligation to present witnesses." Jackson v. State, 575 So.2d 181, 188 (Fla.1991). To protect this tenet of due process, the general rule is that "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." Id. The supreme court has "applied a narrow exception" to the general rule to "allow comment when the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state." Id. A witness is not "equally available" to the state if the witness has a special relationship with the defendant. Lawyer v. State, 627 So.2d 564, 567 (Fla. 4th DCA 1993).
Applying the supreme court's holding in Jackson, this court has held that the manager at a defendant's former place of employment, Lawyer, 627 So.2d at 567, a coworker of the defendant's girlfriend, Thomas v. State, 726 So.2d 369, 370 (Fla. 4th DCA 1999), and a person whom the defendant had met at a homeless shelter, Hogan v. State, 753 So.2d 570-71 (Fla. 4th DCA 1999), did not have the type of special relationship with a defendant that would allow the state to comment upon their absence at trial. In a pre-Jackson case, Crowley v. State, 558 So.2d 529 (Fla. 4th DCA 1990), we reversed a conviction where a prosecutor's closing argument focused on the defendant's failure to call any of the people at the scene of his arrest to corroborate his claim that drugs found on the ground were not his.
This case meets neither of the Jackson requirements that would allow the state to *285 make an issue of a defendant's failure to call witnesses. First, Love raised no affirmative defense for which he assumed any burden of proof; he claimed that the crimes never occurred. Second, Love had no special relationship with the witnesses outside of the church; the witnesses were analogous to the people at the scene of the crime in Crowley. It was therefore prejudicial error for the prosecutor to focus on the failure to call these witnesses during both the cross examination of Ivery and closing argument.[1]
Love next attacks a ruling that precluded him from offering evidence about the bias of a state witness. Corporal Peters testified during the state's case. During the defense case, Love called Lawrence Holborow, a former member of the Pahokee police department who had supervised Peters. Holborow was prepared to testify that four months before Love's arrest, Peters and Love had a heated discussion during which Peters said to Love, "Do you think it's okay to call me cracker, nigger?" The trial judge refused to admit the testimony, ruling that the prejudicial effect of the testimony substantially outweighed its probative value under section 90.403, Florida Statutes (2006). The court commented that the testimony might "become the theme of the case . . . to the exclusion of what really happened."
The trial court erred in preventing Love from introducing evidence about Peters's racial bias, since such testimony was admissible under section 90.608(1)(b), Florida Statutes (1996). To introduce Holborow's testimony, Love was not required to question Peters about the statement during the state's case. See Jones v. State, 678 So.2d 890, 893 (Fla. 4th DCA 1996); Alford v. State, 47 Fla. 1, 36 So. 436 (1904).
Section 90.608(2)(e) provides that any party may attack the credibility of a witness by "[s]howing that the witness is biased." Where a defendant is African-American, a witness's bias against the defendant as an African-American, as well as a generalized prejudice against black persons, are proper subjects to explore under section 90.608(2). See Jackson v. State, 585 So.2d 420 (Fla. 1st DCA 1991); Lee v. State, 422 So.2d 928, 931 (Fla. 3d DCA 1982); Smith v. State, 404 So.2d 167, 169 (Fla. 1st DCA 1981). "The ability to expose an improper impetus for a witness' testimony is an essential component of the right to a jury trial." Jones, 678 So.2d at 892; see Purcell v. State, 735 So.2d 579 (Fla. 4th DCA 1999). Although a trial judge has the discretion to control the mode, order, and scope of cross examination under section 90.612(1), Florida Statutes (2006), such discretion is "constrained by a defendant's right to confront adverse *286 witnesses." Smith, 404 So.2d at 169. Similarly, the Sixth Amendment narrows a trial court's discretion to exclude evidence of a witness' bias under section 90.403.
The trial court abused its discretion in disallowing Holborow's testimony, which concerned Peters's expression of bias directly to Love. This was not a case where the bias was "too remote in time from the incident in question" or without any connection to the case. Lee, 422 So.2d at 931.
Next, Love complains about a number of evidentiary rulings that he did not preserve at trial with a proper objection, many of which he invited by throwing open the door on cross examination after being asked by the trial court if he was "sure" he wanted to proceed, knowing that the prosecution would be able to follow up with questions on redirect examination. For example, the references to Love's "hit list" of Pahokee officers who had behaved improperly were both invited and not preserved. In the context of this trial, the term "hit list" does not have the "extreme emotional impact" that Love now claims on appeal. The list refers to the officers whose bad conduct Love wanted to expose to the city commission. Also, once Love suggested that the officers' actions on the street had sinister implications, the state was entitled to show another basis for the officers' conduct, that the police chief had told the officers that Love was "someone to watch out for."[2] Similarly, once Love suggested that Officer Levey had been forced to leave the Pahokee police department under the dark cloud of an investigation, the state was entitled to establish that the Palm Beach County Sheriff's Office had investigated Levey's conduct in the Love arrest prior to hiring him. "The `opening the door' concept is based on considerations of fairness and the truth seeking function of a trial," where redirect examination reveals the "whole story of a transaction only partly explained" in cross examination. Bozeman v. State, 698 So.2d 629, 630-31 (Fla. 4th DCA 1997).
On a preserved issue, we agree with Love that the state crossed the line when the prosecutor asked Officer Levey a series of leading questions to establish the officer's "understanding [that Love] boasted about wanting to kill and injure officers," and that Love had "the ability and influence to carry out the threats, based upon his criminal record and interaction and influence with the citizens" of Pahokee. Levey did not hear Love talk about wanting to harm officers; the knowledge came from some unidentified third party. Hearsay within hearsay is not excluded under the hearsay rule, "provided each part of the combined statements conforms with an exception" to the rule. § 90.805, Fla. Stat. (2006). While Love's statement to the unnamed declarant was an admission under section 90.803(18), the declarant's statement to Officer Levey falls under no hearsay exception. If the statement about killing and injuring officers was not offered for the truth of its contents, but to explain why the officers behaved as they did at the scene of the arrest, then the minimal probative value of the words heard by an unidentified declarant, little more than a rumor, was substantially outweighed by the danger of unfair prejudice from the inflammatory accusation. See § 90.403, *287 Fla. Stat. (2006). Officer Levey's reference to Love's criminal record is not admissible under any section of the evidence code. During Love's cross examination, the state did not impeach him with a conviction of any crime, pursuant to section 90.610, Florida Statutes (2006).
Love claims that the trial court "precluded" his defense that the "Pahokee police used the traffic stop in this case as an opportunity to beat him because of his complaints about them and his assertions that they were corrupt." The trial court properly allowed evidence that Love was a frequent, loud, and vocal critic of the police at city commission meetings. The trial court correctly ruled on the specific matters Love identified in his brief:[3]
1) Love questioned Pahokee City Commissioner Ally Biggs about why she was concerned when she saw Love's car at the side of the road with police officers. She replied that she had heard from "someone from the police department" that something was supposed to happen to Love. The court properly sustained the state's objection to this testimony. Although statements of police department employees would have been admissible under section 90.803(18)(d), the admission exception to the hearsay rule, here there were not sufficient indicia of reliability to the statement that the police targeted Love, in part because the person who made the statement was not identified. See Garland v. State, 834 So.2d 265, 267-68 (Fla. 4th DCA 2002).
2) Questioning Biggs as to the problems between Pahokee citizens and the police, Love sought to establish that residents who talked to Biggs "were in a fearful state." The trial court properly sustained an objection based on relevance.
3) The trial court correctly sustained an objection to a question calling for Biggs to relate discussions with citizens about certain police officers. The question plainly called for hearsay.
4) The trial court sustained the state's objection to questions to Biggs asking for the reputations of Levey and Peters "in the community as police officers" and her own experience with these officers behaving in certain ways. Under section 90.404(1)(b)1, Florida Statutes (2006), the aggressive nature of a victim's character is admissible only in cases where a defendant alleges self-defense. Dupree v. State, 615 So.2d 713, 720 (Fla. 1st DCA 1993); Charles W. Ehrhardt, Florida Evidence § 404.6 (2004 ed.). In construing Federal Rule of Evidence 404, upon which this section is modeled, Federal Courts also allow character evidence only when the accused has raised the issue of self-defense. See Dupree, 615 So.2d at 721 (citing United States v. Greschner, 647 F.2d 740 (7th Cir.1981)). Here, Love did not claim self-defense. Also, Love's question did not call for a "pertinent trait of character" under section 90.404(1)(b)1; a reputation as a "police officer" is not a character trait like peacefulness or honesty. Even where character evidence is proper, admissible evidence is "limited to the testimony witnesses who are aware of the victim's *288 reputation for the pertinent character trait." Ehrhardt, § 404.6 (Emphasis added); § 90.405, Fla. Stat. (2006); see Dupree, 615 So.2d at 721. A litigant may not prove a character trait by offering evidence about instances of conduct that demonstrate the trait.
5) Mayor James Sasser named all the officers about whom Love had complained in city commission meetings. The trial court properly sustained a relevance objection when Sasser began talking about the "well-documented" problems with the police department that required some type of intervention by the sheriff's office.
The fundamental error in this case arose from the trial court's charge to the jury. Even though the prosecutor pointed out that the two battery charges involved separate crimes, the trial judge insisted on using one instruction for the two counts of battery on a law enforcement officer; in the standard charge, four times the court described the victim as "G. Hachigian and/or J. Levey." For the resisting with violence count, the court four times named the victim as "G. Hachigian and/or J. Levey." With these instructions, the court failed to correctly instruct on elements of the crimes that were "in dispute." See Garzon v. State, 939 So.2d 278, 283 (Fla. 4th DCA 2006). It is the trial judge's responsibility to "ensure `that the jury is fully and correctly instructed as to the applicable law.'" Id. (quoting Moore v. State, 903 So.2d 341, 342 (Fla. 1st DCA 2005)). As the instructions read, the jury could have convicted on both battery counts even if they found that only one of the officers was intentionally touched or struck. The "and/or" instruction on the resisting count presents similar problems. On retrial, the trial court should avoid the "and/or" locution, and separately instruct the jury on each battery count. See Reed v. State, 837 So.2d 366 (Fla.2002); Davis v. State, 804 So.2d 400 (Fla. 4th DCA 2001); Womack v. State, 942 So.2d 955 (Fla. 4th DCA 2006); Dempsey v. State, 939 So.2d 1165 (Fla. 4th DCA 2006).[4]
Reversed and remanded.
FARMER and KLEIN, JJ., concur.
NOTES
[1] As an additional ground for reversal on this point, Love points to cases where the state succeeded in excluding evidence at trial, and then argued that the absence of such evidence was probative of the defendant's guilt. See Reid v. State, 784 So.2d 605 (Fla. 5th DCA 2001); Gonzalez v. State, 774 So.2d 796 (Fla. 3d DCA 2000); Villella v. State, 833 So.2d 192 (Fla. 5th DCA 2002). These cases do not apply here. On the eve of trial, Love moved for a two week continuance because he had just learned of individuals at the scene during his arrest who might have witnessed the incident and he needed more time to investigate. These potential witnesses were the other people outside the church with Ivery. The defense listed Ivery as a supplemental witness on the first day of trial. The trial court denied the continuance because the case had been continued multiple times and Love's motion came so close to the trial date. Other than Ivery, the potential witnesses were never identified and their proposed testimony was not disclosed. Reid, Gonzalez, and Villella all involve situations where the state secured rulings that excluded from evidence the known testimony of specific witnesses, and then argued that the absence of such testimony was proof of guilt.
[2] "[A] police officer's state of mind is generally not a material issue in a criminal prosecution." State v. Baird, 572 So.2d 904, 907 (Fla.1990); Keen v. State, 775 So.2d 263, 270 (Fla.2000). In this case, Love tried to show that the officers' conduct at the scene, such as calling for back up and arresting him on a driver's license violation, were vengeful acts motivated by Love's criticism of the police. Given this strategy, the state was entitled to explore the motives behind the officers' acts at the scene.
[3] Given the way the state and defense tried the case, we recognize that the trial court worked hard to keep the case within proper bounds. On the one hand, the defense wanted to use the case as a referendum for police-citizen relations in Pahokee; on the other hand, the state sought to introduce every innuendo and negative comment that the police had heard about Love to justify the actions of the police. By so focusing on irrelevant issues, the case recalls the "incredible incident" in People v. Steinhardt, 9 N.Y.2d 267, 270, 213 N.Y.S.2d 434, 173 N.E.2d 871, 873 (1961), where the "lawyers and the court refought the battle of Anzio in the Second World War."
[4] Given the amount of litigation generated by the use of the "and/or" locution in jury instructions, trial courts should avoid the locution when drafting the jury charge on the applicable law. In Garzon v. State, 939 So.2d 278 (Fla. 4th DCA 2006), we adopted a contextual approach for deciding whether an "and/or" instruction gave rise to fundamental error. Garzon certified conflict with Zeno v. State, 910 So.2d 394 (Fla. 2d DCA 2005), but the second district has since written that we read Zeno too broadly. See Green v. State, 968 So.2d 86, 91 n. 9 (Fla. 2d DCA 2007). In both Womack v. State, 942 So.2d 955 (Fla. 4th DCA 2006), and Dempsey v. State, 939 So.2d 1165 (Fla. 4th DCA 2006), this court certified questions involving "and/or" instructions.