CONNER, J.
The propriety of using the conjunctive-disjunctive phrase “and/or” in charging a defendant or instructing a jury has vexed trial and appellate courts since its use was first addressed by the Florida Supreme Court in Cochrane v. Florida East Coast Railway Co., 107 Fla. 431, 145 So. 217 (1932). On the facts of this case, we hold that the use of “and/or” in jury instructions regarding attempted felony murder against two possible victims was not fundamental error and did not create the possibility of a non-unanimous verdict.
Leon Barnett and his brother were charged in one information for a criminal episode involving two victims, M.M. and B.T. The information alleged counts against Barnett separately from his brother. Barnett was charged with attempted felony murder, aggravated battery and robbery with a weapon. Barnett’s brother was charged with the same three crimes. As to both brothers, the alleged victim of the attempted felony murder was “B.T. and/or M.M.” and the alleged victim of the aggravated battery and robbery was B.T. Barnett’s brother was charged additionally with attempted first-degree murder of M.M.
The brothers were tried together with separate juries.[1] The jury found Barnett guilty “as charged” for attempted felony murder and aggravated battery and a lesser included offense of attempted robbery. The verdict form did not state the name of the victim for any of the counts. On ap *645 peal, Barnett raises four issues, only one of which we find merits discussion: whether the conviction for attempted felony murder is fundamentally erroneous because it cannot be determined if the verdict was unanimous.

Factual Background and the Jury Instructions

Barnett was charged for his role in the attempted robbery of B.T. and the shootings of B.T. and M.M. According to M.M.’s testimony adduced at trial, M.M. received a call from B.T. asking for a ride. M.M. drove to where B.T. was located. He saw B.T., Barnett, and Barnett’s brother walking toward his car. B.T. had his cell phone in his hand, and he was doing something with it. M.M. pulled up and stopped, and Barnett approached the front passenger window. The front windows on both sides of the car were halfway down. Barnett pulled out a black gun which appeared to be flat like a semiautomatic handgun, pointed the gun at M.M., and told him to put the car in park. Barnett then pointed the gun at B.T. and asked B.T. for his money back. At that point, Barnett was still near the front passenger window, B.T. was by the back passenger door, and Barnett’s brother was standing at the front driver’s side window. Barnett told B.T. to empty his pockets. M.M. then mumbled “that they weren’t going to get away with this.” Barnett’s brother told M.M. that he wasn’t going to talk that way to his brother, pulled out a silver revolver, and without hesitation, fired two shots into M.M. The first shot hit M.M. in the neck; the second shot was in the back, hitting the spine.[2] A few seconds later, M.M. then heard several gunshots coming from the right rear of his car. M.M. did not see who fired those shots. After being shot, M.M. did not see where Barnett’s brother went. B.T. did not testify, and there were no other eyewitnesses to the shootings.
A witness living in the neighborhood testified that B.T. came to her door after she heard gunshots and said Barnett and his brother “did this to me.” She saw blood on his legs. An officer who arrived at the scene testified that a man identifying himself as B.T. was leaning against a vehicle when he arrived and appeared to have been shot in the leg. B.T. told the officer Barnett’s brother shot him.
An officer testified six spent .45 caliber Winchester shell casings were found in the street where the shootings occurred. A firearm examiner testified the casings found on the ground were discharged from the same semiautomatic gun, not from a revolver. He also testified that one of the bullets that struck M.M., which was expelled from M.M. a year after the incident, was .45 caliber, and it was likely fired out of a barrel larger than intended due to the lack of rifling on the outside of the bullet. The spent casings were similar, but different from the bullet that struck M.M. The firearm expert testified it was possible that the bullet that struck M.M. was fired from a revolver.
No witness testified to seeing Barnett fire his gun. There was no evidence that more than two shots were fired at M.M. M.M. testified he saw the revolver that was used to shoot him and Barnett’s brother was the one who shot him. The testimony of the gun expert could support the conclusion M.M. was shot with a revolver.
M.M. was the only eyewitness to Barnett possessing a gun, and his testimony was the gun was a flat semiautomatic gun. The shell casings found at the scene were consistent with being fired from a semiautomatic handgun. The physical evidence supports the conclusion B.T. was shot with *646 an automatic weapon.[3] Therefore, either B.T. was mistaken as to who shot him or Barnett passed his gun to his brother before his brother shot B.T.
On the charge of attempted felony murder, the trial court instructed the jury:
To prove the crime of attempted felony murder, the State must prove the following three elements beyond a reasonable doubt. One, Leon Barnett committed or attempted to commit a robbery. Two, while engaged in the commission or attempted commission of robbery, the Defendant committed or aided or abetted an intentional act that is not an essential element of felony murder. Three, this intentional act could have, but did not cause the death of [M.M.] and/or [B.T.]. Robbery is defined by Florida Statutes, by Florida law and will be explained in a moment. In order to convict Leon Barnett of attempted felony murder, it is not necessary for the state to prove that he had a premeditated design or intent to kill.
(emphasis added).

Legal Analysis

“While the presentation of dual theories of a crime is allowable, this occurs when a defendant is charged with the commission of one crime, and the State presents two scenarios or bases supporting the commission of the crime.” Perley v. State, 947 So.2d 672, 674 (Fla. 4th DCA 2007). In Saldana v. State, 980 So.2d 1220 (Fla. 2d DCA 2008), the defendant was charged with possession of a firearm in which the information alleged the defendant possessed a “9mm handgun and/or .45 caliber Ruger.” Saldana, 980 So.2d at 1221. As noted by the Second District,
Florida Rule of Criminal Procedure 3.140(k)(5) permits disjunctive or alternative allegations for an offense that may be committed by one or more of several means or acts. Rule 3.140(o) provides that no motion to dismiss for a disjunctive pleading defect will be granted unless the information is so vague or indistinct as to embarrass or mislead the defendant in preparing his defense.
Saldana, 980 So.2d at 1221-22. The State’s opportunity to pursue alternative theories of the commission of a crime includes situations in which the information alleges more than one victim. Knight v. State, 819 So.2d 883 (Fla. 4th DCA 2002) (a defendant’s continuous violent resistance of multiple officers constitutes only one instance of resisting arrest; naming more than one officer in that count was not in error, as appellant could be convicted of only one count of resisting arising from his confrontation with either or both officers).
It is the trial judge’s responsibility to “ensure ‘that the jury is fully and correctly instructed as to the applicable law.’ ” Love v. State, 971 So.2d 280, 288 (Fla. 4th DCA 2008) (citing Garzon v. State, 939 So.2d 278, 283 (Fla. 4th DCA 2006), and quoting Moore v. State, 903 So.2d 341, 341 (Fla. 1st DCA 2005)). The importance of proper jury instructions is particularly critical where the State pursues alternative theories of guilt.
Because Barnett admits that he did not object to the jury instruction for the attempted felony murder offense, the standard of review is whether any defects constitute fundamental error. Perley, 947 So.2d at 674; Dempsey v. State, 72 So.3d 258 (Fla. 4th DCA 2011). “[F]or jury in *647 structions to constitute fundamental error, the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Garzon v. State, 980 So.2d 1038, 1042 (Fla.2008) (internal quotations omitted). “Courts must analyze the totality of the record to determine if an errant instruction is fundamental error.” Dempsey, 72 So.3d at 261 (citations omitted). “[I]f the totality of the circumstances indicates there is no reasonable possibility an alleged jury instruction error contributed to the verdict, the error is not fundamental.” Croom v. State, 36 So.3d 707, 709 (Fla. 1st DCA 2010).
The State argues that any error in this case is not fundamental, citing Dempsey, Croom, and Provow v. State, 14 So.3d 1134, 1136 (Fla. 4th DCA 2009). In Dempsey, this court held that it was not fundamental error to use “and/or” between the names of victims in a jury instruction for robbery, relying on Croom and Provow. In Croom, the defendant was charged in the alternative with committing assault on at least one of three victims. The First District held it was not fundamental error to charge the defendant in this manner when there was overwhelming evidence that the defendant committed assault on all three of the victims. Croom v. State, 36 So.3d at 710. In Provow, the defendant was charged with resisting an officer with violence, with the court placing “and/or” between the names of the two officers that the defendant resisted in the instructions. We held there was no fundamental error when the defendant’s continuous resistance of both officers constituted only one instance of resisting. Provow, 14 So.3d at 1136.
However, the State’s reliance on Dempsey, Croom, and Provow does not address the specific argument raised by Barnett concerning his conviction on attempted felony murder. Barnett argues that the combination of the information alleging alternative victims of the attempted felony murder as “[B.T.] and/or [M.M.],” the verdict form finding Barnett guilty of attempted felony murder “as charged,” and the jury instructions explaining intentional act element “could have, but did not cause the death of [M.M.] and/or [B.T.],” created the possibility that the jury verdict for that count was not unanimous. Barnett contends the possibility the jury verdict was not unanimous constitutes fundamental error.
In support of his argument, Barnett relies on our decision in Perley, which relied on the First District’s decision in Robinson v. State, 881 So.2d 29 (Fla. 1st DCA 2004). Quoting from Robinson, we said in Perley: “As a state constitutional matter, a criminal conviction requires a unanimous verdict,” and “[wjhere a single count embraces two or more separate offenses, albeit in violation of the same statute, the jury cannot convict unless its verdict is unanimous as to at least one specific act.”[4] Perley, 947 So.2d at 675. Unlike the offense of resisting an officer addressed in Provow, where the offense could have more than one victim, attempted felony murder, by definition, can have only one victim. By alleging two alternative victims of attempted felony murder in this case, coupled with jury instructions suggesting alternative victims, the State, arguably speaking, facially raised the possibility that a jury verdict on that count may not be unanimous.
Barnett raises an interesting argument that was apparently never addressed as an *648 issue in Dempsey, Croom, or Provow, where the courts did not address the possibility of a non-unanimous verdict.[5] However, Barnett’s argument fails because the State never argued to the jury a theory that Barnett shot M.M. or aided or encouraged his brother to shoot M.M., nor did the State present any evidence to support such a theory.
As the trial court instructed, to satisfy one of the elements of attempted felony murder, the State had to prove in this case that Barnett, while engaged in the attempt to rob B.T., engaged in an intentional act that was not essential to the crime of robbery. Fla. Std. Jury Instr. (Crim.) 6.3. As to that element, the State introduced evidence, regarding B.T. as the victim, that during the course of the robbery, Barnett shot B.T., an intentional act that was not necessary to accomplish the robbery. However, as to the shooting of M.M., the sole eyewitness, M.M., unequivocally testified that Barnett’s brother fired the shots to his neck and spine. There was no evidence that Barnett aided or encouraged the shooting of M.M. Regarding attempted felony murder with M.M. as the victim, Barnett argues the jury’s verdict may have rested on a finding that the shooting of M.M. by Barnett’s brother was proof of Barnett’s guilt because “the jury would not have been able to discern the legal inadequacy of this factual basis,” referring to the intentional act element. In other words, Barnett argues that the jury instruction on the intentional act element invited the jury to find M.M. was the victim when there was no evidence that Barnett shot or assisted in the shooting of M.M.
We would find merit in the argument if the State argued any theory that Barnett was the one who actually shot M.M. or aided or encouraged his brother to shoot M.M. However, after reviewing the record, it does not appear that the State put forth such a theory in opening statements, in the evidence, or in closing arguments. In essence, Barnett asks us to speculate the jury did not properly apply the evidence to the jury instructions. We do not agree there was a reasonable possibility that some of the jurors may have concluded that Barnett was guilty of the attempted murder of M.M. because of a faulty jury instruction. Although it was error for the trial court to include M.M. as a victim of attempted felony murder by Barnett in the jury instructions when there was no evidence to support that conclusion, the error was not fundamental in this case.
We again caution the State and trial judges about the use of “and/or” in infor-mations and jury instructions.[6] We join the First District’s continued condemnation in Croom of the use of “and/or,” which dates back to our supreme court’s condemnation in Cochran in 1932. And we remind the State and trial judges of what we wrote in Provow:
[A]s a matter of legal semantics, when the law prescribes or permits that same logical possibility, and/or may properly *649 be employed to explain it. It may not be used, however, when the only legal choice is disjunctive, with one negating the other, or when the selection of both creates a legally intolerable ambiguity.
Provow, 14 So.3d at 1136 (bold italics in original; additional italics added). The use of “and/or” may create the possibility for non-unanimous verdicts. James v. State, 706 So.2d 64, 65 (Fla. 5th DCA 1998) (“Lumping alleged victims together in a single count of aggravated assault and permitting the jury to return a verdict of “guilty as charged” creates serious due process problems.”).

Affirmed.

DAMOORGIAN, C.J., and WARNER, J., concur.

. No issue is made on appeal about the brothers being tried together.

. M.M. testified he was looking at Barnett’s brother as he fired both shots.

. M.M. heard multiple gunshots at the rear passenger side of his vehicle. All of the casings found in the street were fired from the same semiautomatic gun and one casing was found near the passenger side of the vehicle. Barnett was standing at the front passenger window when M.M. was shot.

. See Justice Shaw's concurring opinion in Bottoson v. Moore, 833 So.2d 693, 710 (Fla.2002), for a discussion of the long Florida history requiring unanimous verdicts.

. We also note that in cases such as Garzon, Dempsey v. State, 939 So.2d 1165 (Fla. 4th DCA 2006), Dorsett v. McRay, 901 So.2d 225 (Fla. 3d DCA 2005), and Concepcion v. State, 857 So.2d 299 (Fla. 5th DCA 2003), appellate courts addressed the use of "and/or” between the defendant and co-defendant in charging documents, but there is no discussion of the issue requiring unanimous verdicts. However, in Garzón and Concepcion, there is some discussion of the use of "and/or” in jury instructions depriving the defendant of an “individualized verdict.”

. We stated in a footnote in Love, "Given the amount of litigation generated by the use of the "and/or” locution injury instructions, trial courts should avoid the locution when drafting the jury charge on the applicable law.” Love, 971 So.2d at 288 n. 4.