CONNER, J.
Brock D. Mardis appeals his conviction for sexual battery on grounds the trial court erred in precluding him from introducing evidence that the victim had financial reasons for falsely testifying against him. We agree with one aspect of Mar-dis’s contention and reverse.

Factual and Procedural Background

The victim (“T.M.”) met Mardis while she was in high school in Kentucky. They became boyfriend and girlfriend. After graduating, she moved to Florida. A few months later, Mardis followed, and they lived together in an apartment rented by T.M. At some point, Mardis was hired by an employer (“the Employer”) to be a handyman or personal assistant. Mardis would work for the Employer daily. The Employer was very generous, even paying off the couple’s credit card debt. Sometimes, Mardis would stay the night at the Employer’s residence, and T.M. would stay with him. Eventually, Mardis wanted to *952 live at the Employer’s house with T.M., but T.M. didn’t want to live there. T.M. and Mardis mutually decided to break off their relationship.
According to T.M.’s testimony at trial, after the breakup, she and Mardis continued to see each other and would occasionally have sex. On the night of the incident, they were together earlier in the evening. Later, while she was sleeping, Mardis called her. Mardis told her that he was coming to see her to discuss some things. T.M. could tell Mardis was intoxicated. T.M. let Mardis into her apartment when he arrived because she didn’t want him driving around drunk. Mardis became sick and threw up in T.M.’s bathroom, so T.M. offered to let him sleep on the couch for the night. T.M. went to bed, and at some point, Mardis came into her bedroom. T.M. told him to leave. Instead of leaving, Mardis got into bed with T.M., told her he wanted to snuggle, and then started to rub her stomach and legs. T.M. told him to stop and leave, and Mardis became angry and started to pace the room. Mardis got on the bed and told T.M. that “if [she] wasn’t going to have sex with him then he was going to have sex with [her] whether [she] liked it or not.” He then forced T.M. to have sex with him and later threatened to commit suicide. T.M. fled and called 911.
After Mardis was arrested, he was interviewed by police. In the interview, Mardis claimed that although he and T.M. were separated, they were still regularly having sex. The night of the alleged assault, he claimed T.M. invited him into bed and never asked him to sleep on the couch. Mardis admitted that T.M. told him to stop touching her when he put his hand down her underwear. Mardis claimed that he thought she was “playing” him because in the past, she would refuse sex and then agree to have sex. However, later in the interview Mardis seemed to admit to assaulting T.M. because T.M. allegedly told his family that he was having a homosexual relationship with the Employer. He then admitted to feeling so ashamed that he threatened to kill himself.
At trial, Mardis testified that he and T.M. began having financial problems when Mardis was not properly managing his diabetes and could not work to pay his part of the rent. Mardis got a job with the Employer as his personal assistant, but he was paid in kind instead of with money, which caused a further strain in their relationship. Once Mardis moved in with the Employer, his sexual relationship with T.M. began to diminish, and they eventually broke off their relationship.
According to Mardis, the night of the alleged assault, Mardis had a couple of glasses of wine and had just taken his insulin. Mardis was driving to T.M.’s apartment to talk to her. When he arrived, T.M. was dressed only in a sports bra and panties, which Mardis thought was intentionally provocative. They talked, watched TV, and then went to bed. Mar-dis again claimed T.M. did not ask him to sleep on the couch. They had sex, and Mardis claimed that T.M. did not seem angry or upset until afterwards, because he did not use a condom.
At trial, Mardis made a proffer in an attempt to introduce evidence of bias on the part of T.M. He proffered testimony from the Employer and others that T.M., through a friend (“S.G.”), attempted to solicit money from the Employer to pay money she needed to cancel the rental agreement for the apartment she shared with Mardis. S.G. became T.M.’s roommate after Mardis moved out. Mardis also attempted to introduce testimony from the Employer about two telephone conversations with S.G. in which S.G. and T.M. were soliciting money to drop the charges *953 against Mardis. Although the Employer admitted on cross-examination that he did not speak directly to T.M. on the phone during either call, he testified he heard T.M. speaking to S.G. in the background and, in essence, participating in what S.G. was saying on the phone. The trial court prohibited introduction of the testimony presented on proffer to the jury. Regarding the solicitation of money to cancel the rental agreement, the trial court concluded the proffered evidence was not relevant to the initial report of rape by T.M. The trial court did not specifically explain why it was not allowing the admission of testimony that T.M. solicited the Employer for money to drop the charges.[1]

Legal Analysis

Mardis argues on appeal that the trial court improperly excluded evidence that T.M. was financially motivated to lie about being sexually battered by him. He attempted to present two lines of evidence to support that theory of defense: evidence that she was seeking money to get out of a rental contract and evidence that she was seeking money to drop the charges. We conclude the trial court did not err in refusing to admit evidence she sought money to get out of the rental agreement, but we conclude the court improperly excluded evidence of her attempts to obtain money in exchange for dropping charges.
A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. Harden v. State, 87 So.3d 1243, 1246 (Fla. 4th DCA 2012). The trial court’s discretion, however, is limited by the rules of evidence. Id.
Section 90.608(2), Florida Statutes (2009), allows a party to attack the credibility of a witness by showing that the witness is biased. “Matters that demonstrate bias include prejudice, an interest in the outcome of a case, and any motivation for a witness to testify untruthfully.” Williams v. State, 912 So.2d 66, 68 (Fla. 4th DCA 2005) (citation omitted). “Because liberty is at risk in a criminal case, a defendant is afforded wide latitude to develop the motive behind a witness’s testimony. The ability to expose an improper impetus for a witness’s testimony is an essential component of the right to a jury trial.” Id. (citations omitted). As we wrote in Smith v. State, 98 So.3d 632, 637 (Fla. 4th DCA 2012):
“The ability to expose an improper impetus for a witness’ testimony is an essential component of the right to a jury trial.” Love v. State, 971 So.2d 280, 285 (Fla. 4th DCA 2008) (quoting Jones v. State, 678 So.2d 890, 892 (Fla. 4th DCA 1996)). In Love, the court noted the defendant’s right to confront adverse witnesses, and that “the Sixth Amendment narrows a trial court’s discretion to exclude evidence of a witness’ bias under section 90.403.” Id. at 285-86. “[W]hen cross-examination alone is not sufficient to expose the possibility of improper motives in a witness, a defendant may present other impeachment testimony to demonstrate bias.” Hair v. State, 428 So.2d 760, 762 (Fla. 3d DCA 1983). Extrinsic evidence is admissible for collateral impeachment as “evidence which would discredit a witness by pointing out the witness’s bias, corruption or lack of competency.” Correia v. State, 654 So.2d 952, 954 (Fla. 4th DCA *954 1995) (citing Dempsey v. Shell Oil Co., 589 So.2d 373, 377 (Fla. 4th DCA 1991)).
We have made clear that a defendant has a “strong interest in discrediting a crucial state’s witness by showing bias, an interest in the outcome, or a possible ulterior motive for his in-court testimony.” Purcell v. State, 735 So.2d 579, 580 (Fla. 4th DCA 1999); Jones v. State, 385 So.2d 132 (Fla. 4th DCA 1980). However, the defense’s right to present such evidence has limits. “Evidence of bias may be inadmissible if it unfairly prejudices the trier of fact against the witness or misleads the trier of fact.” Breedlove v. State, 580 So.2d 605, 609 (Fla. 1991).
We agree with the State that the trial court did not abuse its discretion by denying admission of evidence that T.M. was seeking money to get out of a rental contract. In the trial court’s view “all the testimony, the statements, the depositions” relating to solicitation of money to get out of a rental contract was not relevant to the initial report of rape by T.M. Mardis did not argue at trial or on appeal that T.M.’s statements about the incident changed after her initial report to law enforcement or as she was seeking money.[2]
The solicitation of money to drop charges is another matter. Such evidence supports an inference that there may have been a motivation to fabricate the charge in the first place. The fact that the Employer admitted that he did not speak directly to T.M. during the two telephone conversations when the solicitation was allegedly made does not make the evidence inadmissible hearsay. The Employer testified that he heard T.M. talking in the background, he heard what she said, and absent more rigorous cross-examination by the State showing otherwise, it appears T.M. was participating, if not encouraging, S.G. to do the talking and negotiation for the solicitation. It was for the jury to decide the credibility of the Employer’s testimony. We also conclude the exclusion of the Employer’s testimony regarding the solicitation of money to drop charges was not harmless error. Thus, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

TAYLOR and MAY, JJ., concur.

. It is unclear from the record whether the trial court concluded the testimony that T.M. solicited money to drop charges was hearsay or overlooked making a ruling on that evidence. During argument on the proffer, the State argued that the two conversations were between S.G. and the Employer; the State did not address the Employer's testimony that he heard T.M. speaking in the background and participating in the conversation.

. Absent proof T.M. was altering her version of what happened, the evidence presented on proffer is arguably excludable under section 90.403, Florida Statutes (2010) as tending to be misleading, even if the evidence is arguably relevant to support an inference of fabrication. There is a difference between someone fabricating a false charge from the beginning to get money and someone using a legitimate criminal charge as leverage to seek money for the payment of bills.