# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**LIZETT ALEXIS ALLEN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-1553

[April 21, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Caroline C. Shepherd, Judge; L.T. Case No. 50-2018-CF-006210-AXXX-MB.

Carey Haughwout, Public Defender, Ross F. Berlin and Claire Victoria Madill, Assistant Public Defenders, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Lizett Allen appeals from her conviction and sentence for grand theft over $20,000 following a jury trial. Appellant raises five issues on appeal, but we write only to address the third issue—that the trial court erred by prohibiting the introduction of relevant evidence. We agree with Appellant's third contention and, as explained below, conclude that the evidence was relevant to the defense's effort to establish a motive for the purported victim to fabricate her testimony against Appellant. The State has failed to establish that this error was harmless beyond a reasonable doubt, and we thus reverse and remand for a new trial.

## Background

The State charged Appellant with grand theft over $20,000, alleging that Appellant routinely overcharged the credit card of the purported victim, who was a client at Appellant's hair salon. The primary evidence against Appellant consisted of the purported victim's testimony, bank records showing excessive charges with the funds going into Appellant's

personal accounts, and a text message exchange between the purported victim and Appellant.

The purported victim testified that she discovered the alleged fraudulent charges after checking her bank account statement in February 2017. After this discovery, she called Appellant to determine why her account had been overcharged by substantial amounts. Appellant told her that she had switched merchant accounts, and that the switch must have caused the errors. Appellant indicated that she would follow up with the purported victim and provide her with a case ID number from the help-desk ticket she would file. However, instead of providing the purported victim with a help-desk ticket number, Appellant texted her a message stating "I'm so sorry can I call you in the morning and we will talk." The purported victim agreed, but she also asked if the merchants called back with an ID number. Appellant responded "no," and then told the purported victim "I f****d up im so sorry my life went down the drain I will fix it can we talk when you come in at 3" and "I'm sorry I never thought it was that amount please let me fix it if you have to report it I understand." The purported victim made a police report the next morning.

The purported victim explained that she and Appellant were friends, but that she never authorized the excessive charges. On cross-examination, defense counsel asked if she had ever purchased drugs from Appellant. The purported victim denied she had ever done so.

Following up on this line of questioning, defense counsel called Appellant to the stand. Appellant testified that she never charged the purported victim's credit card without her consent and that the charges were all authorized. She explained that, after the first year of knowing the purported victim, first as a client and then as both a client and a friend, Appellant would acquire drugs for her. The two agreed that the drug purchases would be covered by charges to the purported victim's credit card, which was on file at the salon. This payment method was intended to conceal the charges from the purported victim's husband.

Appellant further explained that the text message conversation introduced into evidence was a plan to "smooth over the explanation" to the purported victim's husband. The messages were intended to show him that the overcharges were attributable to Appellant, and thus conceal the purported victim's drug purchases. In furtherance of her defense of consent, Appellant attempted to testify that concealment of the purported victim's drug purchases and use was necessary, as this drug use created friction between the purported victim and her husband and ultimately caused the purported victim's divorce. When the State objected, defense

2

counsel maintained that Appellant overheard arguments between the purported victim and her then-husband related to the purported victim's drug purchases and that their "marriage troubles" were related to the wife's drug use. Despite defense counsel's argument that testimony regarding the impact that the purported victim's drug purchases had on her marriage went "to motive as to why she would make up an allegation that this was fraud and not purchasing drugs[,]" the trial court sustained the State's relevancy objection to questions concerning the purported victim's marriage and divorce.

Following Appellant's testimony, the case proceeded to closing arguments and the jury returned a verdict of guilty. This appeal timely followed.

## Analysis

"The standard of review for admissibility of evidence is abuse of discretion. However, a trial court's discretion is limited by the rules of evidence." *Harris v. State*, 289 So. 3d 962, 966 (Fla. 4th DCA 2020) (quoting *Orton v. State*, 212 So. 3d 377, 378 (Fla. 4th DCA 2017)).

"A party is given wide latitude to develop motive or bias in a witness's testimony." *Roman v. State*, 165 So. 3d 723, 725 (Fla. 4th DCA 2015) (citing *Mardis v. State*, 122 So. 3d 950, 953 (Fla. 4th DCA 2013)). "The ability to expose an improper impetus for a witness' testimony is an essential component of the right to a jury trial." *Jones v. State*, 678 So. 2d 890, 892 (Fla. 4th DCA 1996). "Included in the types of matters that demonstrate bias are prejudice, interest in the outcome of a case, and any motivation for a witness to testify untruthfully." *Id.* As explained by this court in *Elder v. State*, 296 So. 3d 440 (Fla. 4th DCA 2020):

> "[W]here evidence tends in any way, even indirectly, to establish a reasonable doubt of [the] defendant's guilt, it is error to deny its admission." *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990). Put differently, "[i]f there is any possibility of a tendency of evidence to create a reasonable doubt, the rules of evidence are usually construed to allow for its admissibility." *Vannier v. State*, 714 So. 2d 470, 472 (Fla. 4th DCA 1998).

*Id.* at 446 (alterations in original).

Here, Appellant sought to testify that the purported victim's divorce was precipitated by substance abuse issues. Following the State's relevancy

objection, defense counsel explained that the desired testimony was an important component of establishing a motive for the purported victim to testify untruthfully. Counsel explained that, during her deposition, the purported victim indicated "basically that she got divorced because of her drug use." Additionally, defense counsel provided a proffer of the questions that were to be addressed to Appellant and her expected responses, with the plan being to elicit testimony that Appellant had first-hand knowledge that the purported victim and her husband argued about the former's drug use and "how much money was being spent" on drugs, and that this was "a primary reason for [the couple's] divorce."

We agree with Appellant that the above-noted desired testimony was relevant to Appellant's defense that the purported victim fabricated the allegations against Appellant to hide the true nature of the charges from her husband. The testimony regarding the purported victim's marriage and divorce was integral to Appellant's defense strategy of explaining the purported victim's motive to lie to her husband (and in turn to law enforcement and the jury)—to cover up her drug purchases. As such, the evidence was relevant and should not have been excluded by the trial court.

As the evidence was relevant, the pertinent question now becomes whether the exclusion was harmless. A proper harmless error analysis involves more than a mere weighing of the evidence, the "harmless error analysis . . . requires appellate courts to first consider the nature of the error complained of and then the effect this error had on the triers of fact." *Daughtry v. State*, 804 So. 2d 426, 428 (Fla. 4th DCA 2001) (alteration in original) (quoting *Goodwin v. State*, 751 So. 2d 537, 540 (Fla. 1999)). "The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986).

In the instant case, the State has not met this burden. One of the most incriminating pieces of evidence against Appellant, other than the direct testimony of the purported victim, was the text message exchange between Appellant and the purported victim where Appellant admits that she made a mistake and appears to confess to stealing the money. At trial, Appellant attempted to explain that the messages were fabricated to deceive the purported victim's husband and that such an elaborate ruse was necessary because the purported victim's marriage was at risk, resulting in Appellant hiding the drug purchases by falsifying salon purchases and then pretending to have "made a mistake."

Additionally, the State implicitly recognized the importance of this evidence and argument for Appellant's defense. During closing arguments, counsel for the State ridiculed the defense theory, noting:

> All right. Let's talk about facts not in evidence, right? She just got up here and said drugs caused the divorce of this marriage. That's not a fact in evidence. It's made up. You didn't hear that from the stand. That's made up. If she wants to talk about facts not in evidence, let's start with that.

Thus, the State first argued to the trial court that Appellant's testimony that drug use caused the divorce should be excluded because it was not relevant, and then during closing it argued to the jury that this defense theory was not relevant because it was excluded. The fact that the State chose to respond to Appellant's defense theory by noting "[y]ou didn't hear that from the stand" underscores the relevance of the excluded testimony. Accordingly, we cannot say that the exclusion of Appellant's testimony was harmless and are compelled to reverse and remand for a new trial.

In so doing, we caution the prosecutor to exercise additional discretion when addressing the jury during closing arguments. Comments such as: "[w]ell, that's a hot one, right?," and "I think this case is obvious, I hope you think it is, too," are inappropriate and do not assist the jury in analyzing, evaluating, or applying the evidence to the facts of the case. *See Williamson v. State*, 994 So. 2d 1000, 1012 (Fla. 2008). Rather, the first comment injected unnecessary sarcasm into the argument and the latter comment improperly apprised the jury of the prosecutor's personal opinion. As we are reversing due to the improper exclusion of relevant evidence, we need not decide whether these remarks, in conjunction with other questionable comments, deprived Appellant of a fair trial and rose to the level of fundamental error.

## Conclusion

Because Appellant's testimony regarding the nature of the purported victim's marriage as it related to the latter's alleged drug purchases was improperly excluded and the error was not harmless, we reverse and remand for a new trial.

*Reversed and remanded for a new trial.*

WARNER and DAMOORGIAN, JJ., concur.

5

\*          \*          \*

*Not final until disposition of timely filed motion for rehearing.*